Chicago, St. Paul, Minneapolis & Omaha R. Co. vs. Bayfield County.

CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant, vs. BAYFIELD COUNTY, Respondent.

SAME, Appellant, vs. BAYFIELD COUNTY and another, Respondents.

SAME, Appellant, vs. BAYFIELD COUNTY and another, Respondents.

*February 5 — February 23, 1894.*

*Taxation: Exemptions: Property necessarily used in operating railroad: Limitation of actions.*

1. An elevator built by a railroad company at its terminal station on Lake Superior, where none would have been built by private capital, and used exclusively for receiving grain shipped over the railroad and transferring it to lake carriers, is "property necessarily used in operating" the railroad, within the meaning of subd. 14, sec. 1038, R. S.. and is therefore exempt from general taxation. *Milwaukee & St. P. R. Co. v. Milwaukee*, 34 Wis. 271, distinguished.

2. Coal docks built by the railroad company at the same point, where none would have been built by private capital, substantially all the coal received being reshipped over the railroad, and one half of it being used by the railroad company itself, are likewise exempt under the same statute, although leased to and operated by another company.

3. Lands owned by the railroad company, which, though now unused, will be necessary for the purposes of the road in the immediate future, are also exempt from general taxation, the right of exemption being coextensive with the right of condemnation.

4. The provision of sec. 1210h, S. & B. Ann. Stats., requiring an action to set aside a tax sale to be brought within one year, is not applicable where the lands sold were not liable to taxation.

APPEALS from the Circuit Court for *Bayfield* County.

These actions were brought for the purpose of canceling certain tax certificates against the property of the plaintiff at Washburn, Bayfield county, on tax sales of 1890 and 1891, upon the ground that the property is railway property and exempt from taxation. Washburn is the terminal point on Lake Superior of one branch of plaintiff's railroad,

where the traffic on the road is transferred to or received from lake carriers. The plaintiff's railroad tributary to this terminal is over 1,500 miles in length, traversing Wisconsin, Minnesota, the Dakotas, Nebraska, and Iowa.

The real estate which was held liable to taxation in these actions consists of a grain elevator and some large coal docks built by plaintiff, and connected with its road by switch tracks; also, several irregular shaped parcels of land on the shore of Chequamegon Bay, adjacent to the elevator and docks, and between the switch and main tracks of the plaintiff and the bay. The elevator and coal dock, also a large merchandise warehouse with docks, are built out into the waters of the bay a sufficient distance so that large vessels may load and unload alongside. The docks and buildings project out from an irregular point of land immediately opposite the town site of the village of Washburn. The main track of the railroad runs about parallel with the general trend of the shore line, and about 1,000 feet inland from the extremity of this point. The railroad company owns the land lying between its main track and the shore, which land thus forms practically a triangle in shape, with an obtuse angle at the point where the docks are built out into the bay. A part of this triangle of land is covered by the switch tracks of the plaintiff, which diverge from the main line and run to the docks; but a considerable part is not used for any purpose at present, though manifestly very desirable for other switch tracks and docks, when such are necessary. It is this unused land which has been taxed. The circuit court held that the elevator, coal docks, and unused lands were all subject to taxation, and the plaintiff appeals.

: For the appellant there was a brief by *W. W. Downs* and *Tomkins & Merrill*, and oral argument by *W. M. Tomkins* and *Thos. Wilson.*

For the respondents there was a brief by *Warden & Alvord* and *J. J. Miles*, and oral argument by *J. J. Miles* and *E. C. Alvord.*

WINSLOW, J.   Under the provisions of subd. 14, sec. 1038, R. S., "the track, right of way, depot grounds and buildings, machine shops, rolling stock, and all other property necessarily used in operating any railroad in this state belonging to any railroad company," are exempt from general taxation. · In lieu of taxes, the company pays into the state treasury, annually, license fees based upon the gross earnings or in certain cases upon the amount of its mileage. R. S. sec. 1213.   This court has had occasion to consider the meaning of the words, "property necessarily used in operating any railroad," several times; notably, in the cases of *Milwaukee & St. P. R. Co. v. Crawford Co.* 29 Wis. 116; *Milwaukee & St. P. R. Co. v. Milwaukee*, 34 Wis. 271; and *Chicago, M. & St. P. R. Co. v. Crawford Co.* 48 Wis. 666. In the first of these cases, it was held that a railway hotel, which was kept principally as an hotel for the traveling public, and only incidentally for the use of travelers on the railway, was not exempt.   In the second case cited, it was held, in brief, that a grain elevator in the city of Milwaukee, where the railroad company stored for hire grain transported over its road until the owner chose to remove it, was not exempt from taxation; it ·appearing that there were other elevators at Milwaukee operated by private parties for the purpose, and that private capital would furnish all necessary facilities for handling and storing ·grain at that place.   But it was also held that warehouses into which freight was received from lake carriers for transshipment over the railroad, and into which freight was unloaded from cars for delivery to the consignee or to connecting carriers, though partially used by propeller lines

for storage of local freight for hire, were exempt, because used principally for a purpose necessary to the operation of the railroad. In this case, it was also held that the word "necessarily," in the statute, does not mean that which is inevitable or absolutely indispensable, but that which is requisite or essential, as these terms are ordinarily used, or perhaps that which is reasonably necessary for the accomplishment of the purpose intended, and, further, that the exemption is coextensive with the right to take land by condemnation. In the last case above cited, it was held that the same railway hotel which in the case in 29 Wis. was held subject to taxation because principally used for accommodation of the general public, was some years later exempt, because it appeared that the hotel was then used chiefly — almost entirely — for the accommodation of railway travelers. In this last case it was said, "The taxability or nontaxability of the property depends on the manner in which it is used." These principles are entirely harmonious, and we shall apply them, so far as applicable, to the present case.

It is contended by respondents that, because this court has held that an elevator in Milwaukee is taxable, therefore it must be held that an elevator at Washburn is taxable. Such a rule pays more attention to mere words than to the substance of things. If the circumstances and uses of the buildings were the same at Washburn as at Milwaukee, we should doubtless adhere to the former decision, because it seems to us a correct statement of the law as applied to the facts of that case.

The present case, however, presents an entirely different state of facts. Washburn is a small village, practically created by the fact that the plaintiff company made its Lake Superior terminal freight station at that point. There were no elevators, docks, or warehouses at the time the plaintiff's road was built, nor are there now, except those

Chicago, St. Paul, Minneapolis & Omaha R. Co. vs. Bayfield County.

erected by the railroad company. The testimony showed, without contradiction, that there has been no private capital at any time ready or willing to build any such structures. It appears beyond reasonable doubt that there would be none there now had not the railway company erected them. The elevator was built and is used for the exclusive purpose of receiving grain shipped over the plaintiff's road, and transferring it to lake carriers for the east. It was not built nor is it used to store grain in for local consumption, but only while waiting shipment to the east. The plaintiff's road, which is tributary to this terminal outlet, stretches 1,500 miles through several great grain-growing states. It can ship no grain from this point unless there be an elevator to receive it; and it seems quite certain there would be no elevator had not the plaintiff built it. In order to perform its duties as a common carrier of grain from the grain fields of the northwest to the grain carriers of the great lakes, an elevator at its Lake Superior terminal is as much a necessity as the cars and engines which haul the grain; and, if private capital will not build it, is not its building and operation by the railroad company "necessary," within the proper meaning of that term? We think this question must be answered in the affirmative. The radical differences between the case of the Milwaukee elevator and the one at Washburn are so apparent as hardly to require any statement of them. In the one case there were ample elevator facilities provided by private capital. The railway company could perform its duties as a carrier of grain, and could transfer it to other carriers, as fully and perfectly by using these private elevators as if it used its own elevators; so it was manifestly not "necessary" that it should build or operate an elevator. In the other case it seems certain that, had the company not built the elevator in question, it could never have carried any grain for shipment to any point beyond its terminal station. It

would have failed to perform its duties as a common carrier of grain between the west and east; and hence, under the circumstances of this case, the building and operation of the elevator was "necessary" to the operation of the railroad and the full discharge of its duties as a common carrier.

In the case of *Milwaukee & St. P. R. Co. v. Milwaukee*, 34 Wis. 271, it was said: "It is the duty of the plaintiff to furnish all *necessary* structures in which to receive freight for shipment over its lines, and into which to unload freight from its cars for delivery to the owner, consignee, or connecting carrier. This is a public obligation imposed upon it as a common carrier." These words are equally applicable here.

Much that has been said as to the elevator applies with equal force to the coal docks. It appears that fully half of the freight tonnage handled over plaintiff's road from Lake Superior is coal which comes in vessels from Lake Erie ports, and is trans-shipped over plaintiff's road by means of the coal docks in question. There are no other coal docks at Washburn, and the building of any by private capital seems utterly improbable. About one half of the coal coming to the docks is used by the company itself for fuel. The coal docks seem to be a practical business necessity. It appears that the coal docks were not operated by the company itself, but were leased to the Northwestern Fuel Company, who handled all the coal passing over the docks. The railroad company had the right to require the lessee to handle and load into cars over the docks, for a specified sum per ton, all coal required for its own use, but not to occupy more than one fourth of the storage capacity of the docks. Substantially, all the coal received was reshipped in cars over the plaintiff's road. We cannot regard the lease as affecting the substantial rights of the plaintiff. It

is simply one method by which the dock was operated. The railroad company may be said, with truth, to be using the dock, whether it be in the hands of a mere employee or a tenant, so long as the entire business transacted over it consists in receiving coal for transportation by the plaintiff, and reshipping the same in its cars over its road. Especially is this the case when it appears that one half of the coal received and shipped is for its own individual use. We regard the coal docks as "necessarily used" in operating the plaintiff's railroad and performing its duty as a common carrier, as well as the elevator.

The irregular shaped parcels of land on the lake shore, which are not now actually occupied by switch tracks or docks, we regard also as exempt, within the fair meaning of the statute. It is well established that in condemning lands for railroad purposes regard may be had to prospective as well as present uses, provided such prospective necessary use in the immediate future be clearly established. Lewis, Em. Dom. § 279; *In re Staten Island R. Tr. Co.* 103 N. Y. 251. Accepting the rule that the right of exemption is coextensive with the right of condemnation, we think the evidence clearly shows that these tracts in question will be necessary for railroad purposes in the immediate future, and so are exempt. It would be an unreasonable rule which would prevent a railway company from condemning any land except that which is absolutely necessary for present business. Such a rule would frequently prevent a railway company from increasing its business and performing its full duty as a common carrier. Regard may be had to the immediate future, and the reasonably certain growth of the business.

The provisions of sec. 1210*h*, S. & B. Ann. Stats., requiring actions to set aside a tax to be brought within one year from the date of the sale, are not applicable, because the

Anderson vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

property was not liable to taxation.    Subd. 6 of said sec.
1210*h*.

*By the Court.*— Judgments reversed, and actions . re-
manded with directions to enter judgment vacating the
tax sales and setting aside the tax certificates.