THE OAHU RAILWAY AND LAND COMPANY, appellee
    *v.* JONATHAN SHAW, TAX ASSESSOR FIRST
    DIVISION, appellant.

APPEAL FROM TAX APPEAL COURT, ISLAND OF OAHU.

SUBMITTED JANUARY 18, 1899.          DECIDED JUNE 5, 1899.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE PERRY, IN PLACE
        OF FREAR, J., ABSENT.

A structure, with the machinery essential to its working, used exclusively for taking coal from a ship and discharging it into the cars of the Oahu Railway & Land Co., to be delivered to purchasers along the road of the Company is property within the exemption from taxation being, in the words of the statute, property "fairly necessary for the reasonable maintenance and operation of the road of the Company."

Exemptions from taxations are strictly construed.

OPINION OF THE COURT BY WHITING, J.

Appeal by the respondent Tax Assessor from the decision of the Tax Appeal Court, Island of Oahu.

The issue in this case is whether or not the coal elevator or coal plant at the Railroad wharf at the harbor of Honolulu is property subject to assessment for taxes. A contract was made between the Government and the Oahu Railway and Land Co. in accordance with the Railroad Laws of Hawaii and contained a provision for exemption of property from taxation under Section 576 of the Civil Laws, which is as follows: "Such contract

as herein authorized may contain a provision for the remission of all or any portion of the taxes upon the property of such company for any period not to exceed twenty years; provided that no taxes shall be so remitted upon any property not fairly necessary to the reasonable construction, maintenance and operation of the road of such company."

Prior to 1897, this coal plant was not in the exclusive use and control of the Railroad Co., and a return of it for taxation was made by the company, but now that it has passed to the exclusive use of the Railroad Company for handling coal carried on its road the question arises, whether or not this property is liable for taxes or is exempt therefrom as being "fairly necessary to the reasonable construction and operation of the road of the Company."

It is claimed that laws exempting property from taxation must be construed strictly and it has been so broadly stated in text books and cases. Taxation is a matter of sovereignty to be performed so far as it can be with justice and equality to all. Exemptions, no matter how meritorious, are of grace and must be construed strictly, Cooley on Taxation Sec. 204. The intention of the Legislature to exempt must be expressed in clear and unambiguous terms: taxation is the rule, exemption is the exception. *Portland, S. and P. R. R. Co. v. City of Saco*, 60 Me. 198; *Harvard College v. Aldermen of Boston*, 104 Mass. 470.

"The cardinal and well known rule of construction is that a statute exempting property from taxation is to be strictly construed. The general rule is settled and familiar, but its practical application is not free from difficulty. The statutes to which it has been applied differ in many particulars. A great diversity of opinion prevails, although all cases profess adherence to the cardinal rule. Some of the Courts enforce the rule with rigid strictness, holding that there must be actual use for railroad purposes and not merely a use for a purpose indirectly connected with the operation of the railroad, while other Courts extend the exemption to property incidentally connected with the operation of the railroad. As much as can be safely said is that in each particular case the question is one of legislative

intention, that intention being gathered from the particular statute strictly construed against the corporation which claims that its property is exempt from taxation, and it appearing clearly that the property claimed as exempt is essential and not barely convenient to the operation of the railroad. The statement made does not advance us very far, for the question of importance and difficulty which must be solved is as to what property is reasonably necessary to the proper operation of the railroad." Elliott on Railroads Vol. 2, Sec. 750.

The Charter of the Illinois Central R. R. Co., after providing for a limited state tax upon its stock, property and assets, declared that "the said Corporation is hereby exempted from all taxation of every kind, except as herein provided."

"The Court in discussing the question of exemption says: What constitutes an exemption from taxation is a question of law, but whether a particular piece of property is within the exemption or not, depends upon the existence or non-existence of certain facts capable of proof, which is a matter for the determination of a jury. We must pass upon the facts as well as the law, and from the facts proved must determine the true relations of the property in question to the road and its operation, rather than from the opinions of witnesses."

"In giving effect to laws exempting property from taxation, the Courts adopt what is known as a strict construction, hence nothing will be held to come within the exemption, which does not clearly appear to be so, and reasonable intendments will be indulged in favor of the state. Presumably all property is subject to taxation. When therefore, it is claimed that a particular piece or classs of property is exempt, the party interposing the claim must come prepared to establish it by clear and satisfactory proof."

In that case it appeared the Company erected on its right of way a grain elevator and leased the same to private parties, who received tolls and compensation for all grain stored therein. It was shown that such elevator was quite convenient and beneficial to the company and its business, but not more so than if built and owned by private parties. The Court held that under the Company's Charter, such elevator was not exempt from taxation, it not being devoted exclusively to the business of the

Company as a Common Carrier, and not being essential to the operation of its road.

But the Court says:

"If the elevator was used exclusively by the company in receiving grain for shipment, or storing it after shipment, without any additional charge therefor, except where the owner neglected to take it away within a reasonable time after its arrival, the property would then be clearly exempt from taxation." *In the matter of Sweigert 119 Ill. 83. Detroit v. Detroit 88* Mich. 349. *County of Todd v. St. Paul, M. and M. Ry. Co.*38 Minn. 163.

The Judgment of the Court must be passed upon the question of necessity in each given case. *State v. Camden and Amboy R. R. and T. Co. v.Woodruff* 36 N. J. L. 94.

Again in *Ill. Cent. R. R. Co. v. The People 119 Ill., 140.*

"Freight houses, elevators, etc., constructed and used solely for the purpose of enabling the company to perform its duty as a common carrier are exempt from taxation; but the company has no more authority under its charter to enter upon the business of warehousing generally, than it has to enter upon that of merchandising, and property, therefore, devoted to such a use not being within the contemplation of its charter, can not be within the exemption. The rule is familiar, that the party alleging exemption from taxation must affirmatively show that the property claimed to be exempt is so in fact. The proof here is hardly sufficient."

"It is true that a witness of unquestioned integrity testified that 'the elevator is used to hold grain that is unloaded from Illinois Central Cars, and also grain that is to be shipped away on them;' but he also testified 'the building is occupied by Halliday Brothers under a contract; they hold the elevator as agents of the Illinois Central Railroad Company and pay that company a compensation exactly how much I do not know.' This clearly excludes the idea that the elevator is used exclusively by the company in the exercise of its franchise as a common carrier, and it does not affirmatively show that the elevator is used exclusively for the storage of grain, shipped or to be shipped, on the Company's Railroad. The evidence does not show that the grain shipped or to be shipped on the Company's

Railroad, must, to enable the company to conveniently discharge its duty to shippers and consignee, pass through this elevator."

And in *The Milwaukee & St. P. R. Co. v. The City of Milwaukee*, 34 Wis. 271, the Court held that, in determining whether particular property of the railroad company is "necessarily used in operating" its road so as to be exempt, the question is whether its use is requisite for the full performance of the duty which the company owes to the public as a common carrier.

Again certain Courts make a distinction between appendages which are necessary and indispensable for operating the road and those which are convenient means of increasing the advantages and profits of the company. *State v. Newark*, 26 N. J. L. 519, *Vermont Cent. R. R. Co. v. Town of Burlington*, 28 Vt. 192, *State, N. J. R. R. & T. Co. v. Hancock*, 35 N. J. L. 537. In Pennsylvania, "warehouses, coal lots, coal shutes and wood yards used or intended to be used as depots for merchandise, coal, wood, &c., for transportation, and machine shops for the manufacture of engines and cars were held to form no part of the construction of the road and were not exempt. They are only indispensable to the profits to be made by the company; they are not appurtenant to the road but to the business done upon it. *Reading Railroad v. Bucks Co.*, 6 Barr 70. *County of Erie v. Erie & Western Trans. Co.* 87 Pa. St. 434. *Wayne County v. Del. and Hudson Canal Co.* 15 Pa. St. 351.

It is not required to exempt property from taxation that it be used exclusively for railroad purposes. It is sufficient if that is clearly shown to be its principal use. *C. M. & St. R. Ry. Co. v. Bd. of Sup'rs of Crawford Co.*, 48 Wis. 673; *Osburne v. Hartford & N. Haven R. R. Co.*, 40 Con. 498.

The taxability or non-taxability of this property depends upon the manner in which it is used. One mode of user renders it taxable and another exempts it. Because the Oahu R. & L. Co. used the coal plant in former years in a manner to render it liable to taxation, it by no means follows that it must be taxed in

1898 if it has so changed the use as to bring the property within the exemption clause. *C. M. & St. P. Ry. Co v. B's Sup'rs of Crawford Co.,* 48 Wis. 675.

The substance of the testimony given by the general manager of the Oahu Railway & Land Co. is as follows:

The coal plant, is a part of the machinery for handling, working and operating the road. It is labor saving machinery to assist in handling freight. It is constructed with reference to the road and in connection with it. We take coal from ships, have a system of cable road, and carry it back, piling or storing it. At times we have as much as eight or ten thousand dollars worth of coal and I had been wanting to provide against strikes and high prices in coal.

The coal is taken from the hold of the ship and dumped into a hopper, from the hopper it slides into the cars, and then rolled back, and dumped along the line at different places. When ready to send down into the country, it is picked up by the machines and reloaded on cars, carried to a shute and shot into the railroad cars. It also can be taken from the ships and loaded direct into the railroad cars.

Before now, we have used the coal plant for shipping coal out of the harbor, but for the last two years, we have not done so, we used it entirely for our own work.

We deliver coal to the plantations on the road—Some have contracts—We charge one dollar a ton for storage and handling and piling on the cars, and the freight; it is a fixed charge just the same as freight. We were led to secure the coal plant by a desire to handle freight more economically; we could bring lands, waste lands in connection with the railroad, into cultivation, by bringing coal and handling it cheap enough so that machinery and pumps could be put into operation and water pumped to a higher elevation.

The coal plant is an apparatus for unloading coal from the ships, storing and reloading cheaply and expeditiously in connection with the railroad. The coal plant has cheapened the price of coal to consumers along the line. We sell coal that used to cost them Eight or Nine Dollars for $7. We don't do any business outside only with the parties along the railway line.

The coal plant was returned voluntarily and taxed in those

years when used for outside business and not engaged in handling or loading cars, and it had nothing to do with the railroad business at that time.

Ten to twelve thousand tons of coal handled during the year of which railroad used some 2400 tons. The coal is imported by Castle & Cooke, and we handle it on its arrival and deliver to plantations from time to time.

An account is kept by Castle & Cooke, by the railroad company and the plantations and settled at convenient times, but the railroad company has control of all the coal from its discharge from the ships to its delivery to the plantations along the road.

This evidence, not being disputed, shows that the coal hoist is a contrivance for expeditiously handling freight to be carried on the cars of the railroad company. We consider that as used at the time of the assessment in question it is property within the exemption from taxation, being "fairly necessary for the reasonable maintenance and operation of the railroad."

*Kinney, Ballou & McClanahan* for the appellee;

*A. L. C. Atkinson* for the appellant.