E. M. HERTER, Treasurer of Shelby County, Iowa, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Local Taxation of Railroad Property: GRAIN ELEVATORS.** Under Code 1873, section 808, providing that real estate belonging to any railway company, not exclusively used in the operation of its road, shall be subject to local assessment and taxation, grain elevators belonging to a railway company, situated on its land, contiguous to its tracks, but leased to and operated by tenants paying a nominal rent, who buy grain for shipment over the road, if used exclusively in storing or taking in grain for shipment over such road, are not subject to local assessment.

REVIEW OF FINDING OF FACT. It appearing that the tenants used the warehouses for the storage of grain for hire, and ground feed therein, though whether for local sale or for hire not appearing, a finding by the trial court that such elevators were not used exclusively for shipping grain over its road, and were subject to taxation under Code 1873, section 808, will not be disturbed.

*Appeal from Shelby District Court.*—HON. WALTER I. SMITH, Judge.

TUESDAY, MAY 28, 1901.

DURING the years 1893, 1894, 1895, and 1896, the defendant owned grain elevators located at the towns of Portsmouth and Panama, in Shelby county. These elevators were situated on the defendant's land contiguous to its railway tracks, and were leased to and operated by tenants, who paid nominal rent therefor, and bought grain for shipment over defendant's road. These elevators were taxed locally for the years mentioned, and this action is to recover the tax so levied. Trial to the court, and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*J. C. Cook* for appellant.

*Thos. H. Smith* for appellee.

SHERWIN, J.—The statute governing the assessment of railway property, so far as it is material to the question before us, is found in sections 808 and 810 of the Code of 1873, which sections are as follows:

"Sec. 808. Lands, lots, and other real estate belonging to any railway company, not exclusively used in the operation of the several roads, * * * shall be subject to assessment and taxation on the same basis as the property of individuals in the several counties where situated."

"Sec. 810. All railway property not specified in section 808 of this chapter, shall be taxed upon the assessment made by the executive council. * * *"

It is conceded by counsel on both sides that the controlling question here is as to the use of the elevators in question. It is not seriously contended by the appellee that an elevator used for the purpose of handling grain and other products for the purpose of shipment over a line of railroad may not be necessary and proper "in the operation of the road." Indeed, it could hardly be said that the operation of a railroad did not include the necessary facilities for handling grain and other articles presented for shipment, and a grain elevator and freight warehouse are as essential for that purpose as are passenger stations and ticket and telegraph offices. It is so held in *Chicago, M. & St. P. Ry. Co. v. Crawford County Sup'rs*, 48 Wis. 66 (5 N. W. Rep. 3); *Chicago St. P., M. & O. R. Co. v. Bayfield County*, 87 Wis. 188 (58 N. W. Rep. 445); *Detroit Union R. Depot & Station Co. v. City of Detroit*, 88 Mich. 302 (50 N. W. Rep. 302). In *Milwaukee & St. P. Ry. Co. v. City of Milwaukee*, 34 Wis. 271, it is said: "It is the duty of the plaintiff to furnish all necessary structures in which to receive freight for shipment over its lines, and into which to unload freight from its cars for delivery to the owner, consignee, or connecting carrier. This is a public obligation imposed upon it as a common carrier." In *Chicago, M. & St. P. Ry. Co. v. Crawford County Sup'rs,*

and in *Chicago, St. P., M. & O. R. Co. v. Bayfield, County, supra,* it was held that it made no difference whether the property was operated by employes of the company or by tenats. Nor can we conceive how this should make any difference. If it is to the greater advantage of the railway company to partially operate its road by inducing third parties to buy and ship grain over its line, it certainly should be permitted to do so. We reach the conclusion, then, that, if the elevators in question were exclusively used in storing or taking in grain for shipment over the defendant's road, they were not subject to local assessment, but were for assessment by the executive council, under section 810.

The remaining inquiry is whether the elevators were in fact exclusively used in the operation of defendant's road. While the tenants paid only a nominal rent therefor, they used them, without restriction, for any purpose they saw fit. It is shown that they used them as warehouses for the storage of grain for hire, and that they ground feed therein, but whether for local sale or for hire does not appear. The trial court evidently found from this evidence that the elevators were not used, as claimed by the defendant, exclusivly for shipping grain over its road. This finding has the force of a verdict of a jury, and, being supported by substantial evidence, must be sustained. The judgment is therefore AFFIRMED.