ADAMS COUNTY ET AL. V. KANSAS CITY & OMAHA RAILWAY COMPANY.

FILED APRIL 7, 1904.  No. 13,185.

1. **Statute:** ELEVATORS.  An elevator is a storehouse within the meaning of section 39, article I, chapter 77, Compiled Statutes, 1899.

2. ———:  CONSTRUCTION.  The phrase "outside of said right of way,"

etc., in the proviso to said section qualifies only the word "property" immediately preceding it, and not the specific terms used in the enumeration of other classes of property therein.

3. **Elevators:** ASSESSMENT. By virtue of such proviso, elevators situate on the right of way of a railroad are subject to assessment by the local authorities, and not by the state board; and that they may be necessary for the successful operation of the road is immaterial.

4. ———: ———. The owner of such elevators can not escape local assessment thereon, and taxes levied in pursuance thereof, by voluntarily listing and returning them for taxation to the auditor of public accounts, and the payment of the taxes levied by the state board.

ERROR to the district court for Adams county: ED L. ADAMS, JUDGE. *Reversed and dismissed.*

*Snider & Logan,* for plaintiffs in error.

*C. F. Manderson, M. A. Hartigan, R. G. Brown, M. A. Reed, J. W. Deweese* and *F. E. Bishop, contra.*

ALBERT, C.

This action originated in the presentation of a claim for the repayment of taxes paid under protest for the year 1900, to the county board of Adams county, which was rejected. Appeal was taken to the district court and submitted on an agreed statement of facts, which, so far as is material at present, is as follows: 1. It is admitted that the Kansas City & Omaha Railway Company is a corporation, created and existing under the laws of the state of Nebraska. 2. That its line of railway passes through the southern portion of Adams county, from east to west, and that there is situate on said railway the village of Le Roy and the village of Pauline in Adams county, Nebraska. 3. It is further admitted that the Kansas City & Omaha Railway Company is owner in fee of its right of way in Adams county, Nebraska, through and over which it passes. 4. It is further admitted that the Kansas City & Omaha Railway Company has erected at the villages of Le Roy and Pauline, as aforesaid, elevators, which

elevators are erected and built upon piers of stone, brick and wood, and that the same are used by lessees in a general grain elevator business in buying and shipping grain to be transported over said railway company's line of road. And there is contained in said elevators, machinery, boilers, engines and other agencies for the handling, unloading and loading of grain received for shipment. And that said elevators are situate within and upon the right of way of said railway company. 5. It is further admitted that said railway company, for the year 1900, listed with the auditor of public accounts for the state of Nebraska, among other items of property, said elevators situate at Le Roy and Pauline, Adams county, Nebraska, and that said railway company has paid taxes levied against it by the state board of equalization. 6. That said elevators, with the machinery therein contained, were by the local authorities of Adams county, duly assessed as personal property, for the year 1900, in the precincts respectively of their location in the said Adams county, Nebraska, and that the taxes so levied and assessed were, by the said railway company, paid under protest, and this action brought to recover the money so paid. 7. It is further admitted that the populations of the village of Le Roy and of the village of Pauline do not exceed 200 in each instance; that in the village of Pauline there is located a grain elevator other than the one taxed to said railway company, and the same is operated by parties who buy, sell and ship grain, doing a general elevator business. 8. It is further stipulated and agreed that both the elevator at Le Roy and the elevator at Pauline were, during the year 1900, and prior and subsequently thereto, leased by said railway company, for value, to parties operating the same as general grain elevators, buying, selling grain and shipping the same over the line of said railway company. 9. That said railway company is not engaged in the purchase and selling or the receiving for storage of grain, but operates said line as a common carrier, transporting freight and passengers for hire. That there are numerous

grain elevators along said railway company's line of road, and other lines of railroad in Adams county, Nebraska, owned and operated by private parties.

The county claims that the judgment of the district court is not sustained by the evidence, and is contrary to law. On the stipulated facts, the court found for the plaintiff, and entered a decree accordingly. The defendants bring error.

The principal question in the case is, whether the elevators were subject to assessment by the local authorities. The question should be answered in the affirmative, unless the property is exempt from such assessment by the provisions of section 39, article I, chapter 77, Compiled Statutes of 1899, in force when the taxes in question were levied. By the provisions of that section, railroad and telegraph companies were required to return to the auditor of public accounts for taxation by the state board of equalization the number of miles of such railroad and telegraph lines in each organized county in the state, and the total number of miles in the state, including the railroad bed, right of way and superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, rolling stock and personal property necessary for the construction, repairs or successful operation of such railroad and telegraph lines. Then follows this proviso:

"*Provided, however,* That all machine and repair shops, general office buildings, storehouses and also all real and personal property outside of said right of way and depot grounds as aforesaid, of and belonging to any such railroad and telegraph companies shall be listed for purposes of taxation by the principal officers or agents of such companies, with the precinct assessors of any precinct of the county where said real or personal property may be situated, in the manner provided by law for the listing and valuation of real and personal property."

The plaintiff contends that each of the terms used in the proviso, to designate the different classes of property,

is qualified by the phrase, "outside of said right of way," etc.; and, consequently, that the location of the property, and not its character or use, is the test whereby to determine whether it should be assessed by the state board, or by the local authorities. We do not think the proviso will admit of that construction. As was said by POST, J., in *Chicago, B. & Q. R. Co. v. Hitchcock County*, 40 Neb. 781:

"The provision under consideration is not found in the revenue law of 1879, but was adopted as an amendment thereto in 1881. By the original act railroad companies were required to return to the auditor of public accounts for taxation, not only the number of miles of track, rolling stock, depot grounds, repair shops, furniture and fixtures, but all other personal property belonging to the corporation. The declared purpose of the amendment is to except from the operation of the above general provision the property enumerated therein, including all real and personal property outside of the company's right of way and depot grounds."

To read the proviso as the plaintiff contends it should be read, it would mean no more than that the real and personal property outside the right of way and depot grounds, were thereby excepted from the general provisions of the section. Had the legislature thus intended, it is not likely they would have followed a specific enumeration by general terms sufficiently comprehensive to include all the preceding terms, and it is still less likely that the learned judge, who prepared the opinion in the case referred to, would have fallen into the same error of composition, had he thus understood the proviso. Besides, from the word "also," following the conjunctive, and the repetition of the collective "all," it is clear, we think, that the phrase, "outside of said right of way," etc., was intended to qualify only the word "property" immediately preceding it.

It is true, in *Chicago, B. & Q. R. Co. v. Hitchcock County, supra,* there is one sentence which, taken by itself, would indicate that the court there held that the location

of property was the arbitrary test whereby to determine what property came within the exceptions of the proviso. But the property, which gave rise to the controversy in that case, consisted of rails, ties and other material for the construction of a railroad, and was outside the right of way. The court held that the location was the test. The language of the opinion must be read and understood in the light of the facts then before the court. That the court, in applying the test in that case, had reference exclusively to personal property, and had no intention to commit itself further than was necessary to a decision in the case before it, is clear. In the present case, the property consists of elevators, located on the plaintiff's right of way, and the question now arises, whether they fall within any of the exceptions of the proviso. The only term in the proviso, which could include elevators on the right of way, is the term "storehouses." A storehouse is "a building for keeping goods of any kind, especially provisions; a magazine * * * a warehouse." Webster. A warehouse is "a house in which wares or goods are kept; a storehouse." Century Dictionary. In *County of Erie v. Erie & Western Transportation Co.*, 87 Pa. St. 434, the court defines elevators as "warehouses for the storage and ready shipment of grain." Throughout that opinion the court uses the term elevators, warehouses and storehouses interchangeably. In *Metz v. State*, 46 Neb. 547, this court held, that a corn crib is a storehouse, within the meaning of the statute defining burglary. From the foregoing definitions, we are thoroughly satisfied that elevators are included within the term storehouses and are among the exceptions contained in the proviso in question.

The foregoing disposes in part, at least, of another contention of the plaintiff's, namely, that the elevators are exempt from local assessment, because they are "necessary for the successful operation" of the road. It is a familiar rule of construction that specific provisions control those which are general. By the general provisions of section 39, the right of way and superstructures thereon,

are exempt from local assessment. But the proviso specifically excepts storehouses, which, as we have seen, include elevators, from the operation of the general provisions preceding it. The specific provisions of the proviso, therefore, must be held to control the general provisions of the section, and to except elevators from the operation thereof.

It is next urged that the elevators, having been assessed by the state board, and the taxes levied thereon having been paid, the plaintiff, if defeated in this action, will be required to pay double taxes on the same property. This, under ordinary circumstances, would constitute a strong appeal, but it loses much of its force in view of the facts in this case. The plaintiff voluntarily listed and returned the elevators, with its other property, to the state board for taxation. A belief that they were assessable by the state board, and not by the local authorities, could arise only from, what appears to us, a most extraordinary and forced interpretation of the language of the legislature. To relieve the plaintiff from the taxes levied by the local authorities, under such circumstances, would be to permit it, by its own act, to divest the local authorities of their legal power to assess the property. The suggestion is not to be tolerated. The taxes levied by the local authorities are lawful, and no escape from their payment suggests itself. As to the taxes levied by the state board, they were not levied on the elevators specifically; the value of the elevators was simply taken into account in fixing the value per mile of the railroad; and every county through which the line passes, shares in whatever increase of taxes resulted from listing the elevators with the state board for taxation. It is obvious, therefore, that in this action the court is powerless to relieve against the taxes assessed by the state board.

It is therefore recommended that the decree of the district court be reversed and the cause remanded, with directions to enter a decree dismissing plaintiff's cause of action.

GLANVILLE, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions to enter a decree dismissing plaintiff's cause of action.

REVERSED AND DISMISSED.

BARNES, J., dissenting.

I am unable to concur in the majority opinion for the following reasons: It was conceded on the trial that the elevators in question are situated upon the depot grounds and right of way proper of the railroad company; that is to say, within its 100 feet of right of way, and on its depot grounds. It was further conceded that the railroad company was not engaged in buying and selling grain, and did not use the elevators for that purpose; that the structures were built by the company for the accommodation of the public, and were leased to local grain dealers, who purchased and stored grain therein to be transported to market by the railroad company as a common carrier; that it received for the use of the elevators the nominal sum of 50 cents a month; that it had properly returned them along with its other taxable property to the auditor of public accounts for valuation and assessment by the state board of equalization; that they had been so assessed, and that the company had paid its taxes thereon for the year in question; that, notwithstanding this fact, the local authorities had again taxed the property and the company had paid the taxes, amounting to about $20, under protest, and that this action was brought for the purpose of recovering the same.

Section 39, article I, chapter 77 of the old revenue law (Compiled Statutes, 1899), under which the assessment in question was made, reads as follows:

"The president, secretary, superintendent or other principal accounting officers within this state of every railroad or telegraph company, whether incorporated by any law

of this state or not, when any portion of the property of said railroad or telegraph company is situated in more than one county, shall list and return to the auditor of public acounts for assessment and taxation, verified by the oath or affirmation of the person so listing, all of the following described property belonging to such corporation on the first day of April of the year in which the assessment is made within this state, viz.: The number of miles of such railroad and telegraph line in each organized county in this state and the total number of miles in the state, including the road-bed, right of way, and superstructures thereon, main and side tracks, depot buildings, and depot grounds, section and tool houses, rolling stock, and personal property necessary for the construction, repairs or successful operation of such railroad and telegraph lines; *Provided, however,* That all machine and repair shops, general office buildings, storehouses, and also all real and personal property, outside of said right of way and depot grounds as aforesaid, of and belonging to any such railroad and telegraph companies shall be listed for purposes of taxation by the principal officers or agents of such companies, with the precinct assessors of any precinct of the county where such real or personal property may be situated, in the manner provided by law for the listing and valuation of real and personal property."

Section 40 provides, in substance, that as soon as practicable after the auditor has received the returns mentioned in the preceding section, or procured the information necessary therefor, a meeting of the state board of equalization shall be held for the purpose of assessing the property so returned; that after such assessment is made by the said board, the auditor shall certify to the county clerks of the several counties in which the property returned is situated, the assessment per mile, and the amount in each of said counties, and that "All such property shall, for the purpose of taxation, be deemed 'personal property,' and be placed on the tax list as hereinafter provided." Construing this law in the case of *Chicago,*

*B. & Q. R. Co. v. Hitchcock County*, 40 Neb. 781, we used the following language:

"It is contended by the plaintiff that the character of the property and use for which it is designed, and not its precise location, is the test which should be applied in determining whether it is taxable by the state board or the local authorities, but we can not so construe the section mentioned without ignoring the plain language of the proviso. It would seem that the intention of the legislature was rather to provide a fixed and arbitrary rule for the taxation by the state board of the property of railroad and telegraph companies within their right of way and depot grounds, and all other property by the local authorities."

The facts in this case bring it clearly within the rule above stated. The decision quoted from is supported by *Red Willow County v. Chicago, B. & Q. R. Co.*, 26 Neb. 660; *Burlington & M. R. R. Co. v. Lancaster County*, 15 Neb. 251; *Burlington & M. R. R. Co. v. Lancaster County*, 7 Neb. 33, and in the opinion of the writer we should not overrule these decisions, and at this time adopt a new construction of the statutes.

Again, it clearly appears from the record that these elevators were built by the railroad company, and leased for merely a nominal sum for the purpose of enabling the lessees to collect and store grain therein to be shipped over its lines for gain or hire; and they may be fairly said to be structures proper and necessary for the successful operation of the road, and especially is this true where, as in this case, there are no grain elevators at the stations in question owned by private persons or individuals which can be used for that purpose. They are, for that reason, exempt under the statute quoted, from taxation by the local authorities. *Herter v. Chicago, M. & St. P. R. Co.*, 114 Ia. 330; *Chicago, M. & St. P. R. Co. v. Board of Supervisors*, 48 Wis. 666; *Milwaukee & St. P. R. Co. v. City of Milwaukee*, 34 Wis. 271, and *Red Willow County v. Chicago, B. & Q. R. Co.*, supra.

For the foregoing reasons, together with the fact that

the majority opinion herein results in subjecting the railroad company to double taxation, a thing which we should not sanction, the judgment of the district court should be affirmed.