The M. & St. P. R. R. Co. vs. The Supervisors of Crawford County.

well lead to a dismissal of the action or bill in the case supposed, even without a corporate vote in favor of the removal of the church building to another place.

: *By the Court.*—Judgment affirmed.

===

THE MILWAUKEE & ST. PAUL RAILWAY COMPANY VS. THE
: BOARD OF SUPERVISORS OF CRAWFORD COUNTY and
others.

STATUTES: *Rule of construction.* — TAXATION: *Exemption of railroad property.*

1. The rule that statutes exempting property from taxation are to be most strictly construed against the party benefitted thereby, and in favor of the public, cannot properly be applied to the provision of our statute exempting from taxation "the track, right of way, etc., and all other property *necessarily used in operating* any railroad in this state," inasmuch as the percentage upon their annual income, which railway companies are required by law to pay in lieu of taxes imposed in the usual manner, must be regarded as, in the judgment of the legislature, an equivalent for such other taxes. The statute should, therefore, receive a fair and liberal construction in favor of such companies.

2. In cases where the maintenance of inns and boarding houses by railway companies at their stations for the use of persons arriving and departing on their trains appears to be necessary for the safety and convenience of the traveling public, the property employed exclusively for that purpose might, it seems, be held exempt under the statute. So intimated in a case where proof was made of the necessity and utility of such railroad inn, and of the fact that the property was not leased, but was managed by a tenant at sufferance of the company, to promote its interests as a carrier of passengers.

3. But when it appears that such an inn is kept for the accommodation of all persons applying to become guests, and not merely for that of persons arriving and departing on the company's trains, the property is liable to taxation.

4. The courts cannot, in such a case, hold distinct portions of the buildings and premises taxable and the residue exempt, but will hold the whole to be taxable.

The M. & St. P. R. R. Co. vs. The Supervisors of Crawford County.

APPEAL from the Circuit Court for *Crawford* County.

This action was brought by the railway company to have the taxes levied, for the years 1868 and 1869, on certain lots and premises at Prairie du Chien, on which the "Dousman House" is situated, declared void, and have them set aside and canceled, and for general relief, on the ground that said lots and premises were not liable to taxation, for the reason that they were the property of the railway company, necessarily used in operating its railroad in this state.

The complaint sets forth that the plaintiff is a railroad company, organized under the laws of this state, and engaged in operating a railroad from Milwaukee to Prairie du Chien; that it paid its state tax or license for the years 1868 and 1869, and in all things complied with the law ; that it owned the lots and premises in question ; and that they were and constituted a part of its depot grounds adjoining its track; and that its tracks extend across said grounds; that the passenger depot, eating-house and necessary out-buildingss are situate thereon; and that all the buildings and fixtures thereon are the property of said railway company, and necessarily used in operating said railroad.

It then alleges that said premises are exempt from taxation, by the provisions of subdivision thirteen of section two of chapter one hundred and thirty of the general laws of 1868, and then alleges the assessment of a tax and proceedings to collect it; and, that said proceedings create a cloud and will prove a great and irreparable damage to the plaintiff if allowed to proceed, and demands judgment that said tax be declared void and set aside, and prays for an injunction in the meantime, to restrain the collection of said tax. An injunction restraining defendants was granted. Defendants answered, admitting the substantial allegations of the complaint, except that it alleged that the lots in question were occupied exclusively by a hotel building known as the Dousman House, and the necessary enclosures and out buildings thereto, and used exclusively for a hotel or

inn for travelers and a boarding house for guests staying thereat, and for a saloon and billiard room; and said premises were so used in 1868 and 1869, and leased to and occupied by J. F. Williams, for a hotel to be used and occupied as such by said Williams and for no other purpose, and were furnished and carried on by Williams at his own expense; and that the profits thereof are received by him and no part of them used for the purposes of said railroad; and that they were subject to taxation, and the taxes were lawfully assessed thereon; and that the railroad had plenty of personal property out of which such tax could be made.

A motion was noticed to dissolve said injunction, but was abandoned on the parties entering into a stipulation to hasten the trial of the cause; that it should be tried on its merits; and that, if the court should hold the property liable to taxation, the plaintiff should pay the taxes levied.

The cause was then referred to a referee, to take and report the testimony with his opinion therefrom; and he reported that the property was not exempt from taxation. The plaintiff excepted to said finding, both as to the law and fact. The court overruled the exceptions, and entered judgment dismissing the plaintiff's complaint on the merits; from which judgment the plaintiff appeals.

The material facts established by the evidence, are stated in the opinion of the court.

*John W. Cary,* for appellants, argued that the necessity of this eating-house or depot building to the operations of the road, was the only question which could be raised in this case; and that it was one for the company to decide; and their decision, if within reasonable limits, cannot be reviewed by the courts, citing *Burns v. The Mil. and Miss. R. R. Co.,* 9 Wis., 450; *Ford v. The Chi. and N. W. R. R. Co.,* 14 Wis., 609; that the building in question was a passenger depot, built and used for that and for a ticket office and eating house, and strictly and wholly for the accommodation and necessities of the railroad, and that

its necessity, as a question of fact, had been fully established by the testimony.

*O. B. Thomas* and *Dutcher & Webster*, for respondents, contended that the word *necessary*, as used in the statute, meant *indispensable* to the use of the road, and that only property of that character was exempt from taxation, citing *Railroad v. Berks Co.*, 6 Barr, 70; *Boston Waterpower Company v. City of Boston*, 9 Met., 199; Angell & Ames on Corp'ns, secs, 449, 450, 452; 1 Met.. 538; 4 Met., 564; Redfield on Railways, 386, note; *Elizabeth Library v. W. Leester*, 4, Dutcher (N. J.), 103; *Vermont Central R. R. Co. v. Burlington*, 28 Vt., 193; that property used by a company for the sole purpose of increasing the business and profits of the road, and only necessary for that purpose, was not exempt, citing 42 Penn., 424; that property the income of which forms no part of the fund on which the per centage paid to the state is based, is not exempt, citing *The People v. Home Ins. Co.*, 29 Cal..533; *State Bank v. City of Milw.*, 18 Wis., 281; that statutes of this nature should be construed most strictly against the corporation and in favor of the public; and that the right of exemption can never rise by mere implication, citing Blackwell on Tax Titles, pp. 409, 632, 633; *Kendrick v. Farquhar*, 8 Ohio, 197; *Armstrong v. Treasurer of Athens Co.*, 10 Ohio, 235; *Cincinnati College v. State*, 19 Ohio, 110; *Anderson v. State*, 23 Miss., 459; *Stewart v. Davis*, 3 Mur., 244; *Chegary v. Jenkins*, 3 Sandf., 409; *Providence Bank v. Billings*, 4 Pet., 514; *Louisville Canal v. Commonwealth*, 7 B. Monroe 160; *Brewster v. Hough*, 10 N. H., 138; *Howell v. Maryland*, 3 Gill, 14; *Platt v. Rice*, 10 Watts, 352; *Seymour v. Hartford*, 21 Conn., 481; Barn. & Add., 793; 2 Scott, N. R., 226; 2 Scott N. R., 228; 11 East, 685; 3 Scott N. R., 803; 6 Scott N. R., 831; 1 Mylne & Heen, 195; 4 Mers. & Wels., 482; Smith's Com. 650; Broom's Max., 7; also 1 Black (U. S.) 446.

DIXON, C. J. Subject only to the qualification that the lower front rooms, constituting respectively the office and ladies' reception room, are likewise used as waiting rooms for passengers, male and female, going to and coming from the cars, the evidence indisputably establishes the allegations of the answer that the premises in question "are occupied exclusively by a hotel building known as the *Dousman House*, and the necessary out-buildings and enclosure thereto connected for the purposes of said hotel, and that the same is used exclusively for a hotel or inn for travelers, and a boarding house for guests staying thereat, and for a saloon and billiard room, together with the necessary out-buildings, stable, yard and enclosure, for the purposes of said hotel, and that said premises were so used during the whole of the years 1868 and 1869," for which the taxes were assessed. With the exception of the additional use of the lower front rooms as waiting rooms, or, as the general manager of the railway company, Mr. Merrill, expresses it, "for the accommodation of passengers as a station house or depot," and excepting also that there is a long platform in front of the house up to which the cars are drawn, for the convenience of passengers, and to and from which they are accustomed to descend from and enter the cars, there is nothing whatever to distinguish this hotel and premises, with all the out-buildings and appurtenances, from any other usually denominated first class hotel or inn, with the appurtenances as they are built and occupied, and familiarly known throughout the country. It is in testimony also, and not disputed, that the hotel is open and kept and used for the accommodation of all guests and travelers, whether they are such as arrive and depart by railway carriage over the company's road, by boats navigating the Mississippi river, or by any other mode of public or private conveyance or travel. It is a public house or inn, alike open and so kept and intended to be for the entertainment and lodging of all who may apply, and in no wise differing from any other establishment of the kind, except in the particulars above stated.

The M. & St. P. R. R. Co. vs. The Supervisors of Crawford County.

The testimony likewise establishes, and with no less clear-ness and certainty, that the erection and maintenance by railway companies, at suitable places along the lines of their roads and contiguous thereto, of station houses or buildings in which passengers may be properly and comfortably supplied and entertained with food and lodging as at hotels, is a necessi-ty of modern railway travel. The custom of most railway com-panies to do this, and the generally recognized public utility and necessity for their doing so, especially on long lines or routes of travel, are fully shown.

It is shown, we think, that the erection and maintenance of such buildings or places of accommodation and entertainment, cannot, in many cases at least, be well or properly left to pri-vate or individual capital and enterprise, but that they should be and remain under the management and supervision of the companies, as being necessarily connected with and forming a part of this mode or system of transportation and travel. It has come to be regarded almost as the duty, and quite properly, as it seems to us, of the railway companies thus to provide and take care for the health, comfort and convenience of their trav-ellers, and this obligation or *quasi* obligation, sanctioned as it is by custom and usage, cannot, or to say the least may not be ad-equately and satisfactorily discharged, unless the ownership and control of these places are in the railway companies.

If we take, for example, one of our great railways leading to the Pacific coast, and passing over the great American plains, or deserts, as they are sometimes called, no one can doubt there the propriety of the company's making such pro-vision for the wants of the traveller. No one can doubt its necessity or hardly say that it is not an absolute duty or obli-gation resting upon the company. In other cases the propriety may be less obvious and the necessity not so urgent, and still it may be proper and necessary. The courts are not to meas-ure the degrees of necessity, provided it be necessary at all. In this case we think it has been shown to be necessary and

proper for the railway company to erect and maintain an establishment of the kind at Prairie du Chien, where the hotel in question is situated, and had it appeared that this hotel was kept and used exclusively for the entertainment of travelers coming to or going from Prairie du Chien by the company's road, we should have had little hesitation in declaring it to be exempt from assessment and taxation under the provisions of the statute. It appears that the company retain the control of and may direct the mode of conducting business in the house. The keeper has no lease or fixed term for which he may hold. He is tenant at sufferance merely, or an employee, or one occupying under the company, and pays no rent. The company derives no income or profit from the business of the house, and is only benefited by the increased travel and trade over its road by reason of the accommodations and facilities thus afforded.
.. The statute, under which this question of taxation or exemption from taxation arises, is subdivision 13 of section 2 of chapter 130, Laws 1868, and reads as follows : " The track, right of way, depot grounds and buildings, machine shops, rolling stock and all other property necessarily used in operating any railroad in this state, belonging to any railroad company, are hereby all and singular declared to be, and they shall henceforth remain exempt from taxation, for any purpose whatever, and it shall not be lawful to assess or impose taxes upon any property before named." The same subdivision contains a proviso with respect to the liability of such property to special assessments for local improvements within cities and incorporated villages, but not affecting the question here presented.
. It will be seen from the reading that the struggle here has been upon the meaning and effect of the word *necessarily*, or of the words *necessarily used in operating any railroad*, as found in the statute, and whether this word or these words are to be so construed as to include or exclude the hotel premises upon which the taxes in controversy were assessed. In considering this question, which is, with respect to the facts of the case

before us, purely one of the construction of our own statute, the language of which differs from that of the statutes of other states involved in the decisions of their courts, very little aid will, we think, be derived from examining those decisions, a number of which have been cited on both sides. The cases in Pennsylvania, in some of which the property of these corporations was held exempt and in others not, and some of which are cited for and others against the proposition here maintained by the railway company, may be said to be about evenly balanced so far as their authority and reasoning upon the question here presented is concerned.

In other states, the statutes not only differed, but the courts were governed by the rule or maxim of construction that statutes exempting property from the burden of general taxation, are to be most strictly construed against the corporation or party benefited thereby, and in favor of the public. It is not easy to say that this rule has any application in the present case, or, if it has, that it applies with much force. The railway companies of this state are required annually to make return, and to pay to the treasurer of the state a sum equal to three per centum of the gross earnings of the roads owned or operated by them respectively, within this state for the year preceding the making of such return, the payment of which sum, prior to the passage of chapter 68, Laws, 1861, was declared to "take the place and be in full of all the taxes of every name and kind upon said roads, or other property belonging to said companies, or the stock held by individuals therein," (R. S. C. 18 § 183.) except special assessments for local improvements within cities and incorporated villages, (Laws 1860, ch. 173). The statutes now in force are chapter 174, Laws 1860, and chapter 22, Laws 1862.

The payment of this sum into the state treasury, and which is called license money, must, in the light of past legislation upon the subject, be regarded as, in the judgment of the legislature, an equivalent for the taxes which those companies

would otherwise be required to pay, if assessed and taxed according to the ordinary method prescribed by law. A strict construction of the statute, therefore, against the company, or a liberal one in favor of the public, can, with difficulty, be justified in view of what seems to have been the legislative intent, and it would seem that little or no effect can be given to the rule. We are at liberty, therefore, and, indeed, required to give the statute a fair and liberal construction in favor of the company, or such an one as it should receive supposing there is no injustice in the claim made by the company, or advantage to be gained by it over the public or tax paying community generally in avoiding the taxation complained of.

As already suggested, if the hotel and premises in question had been used exclusively for the convenience and accommodation of travellers and guests arriving or to depart by the company's road, we should have little doubt of its being "property necessarily used in operating the railroad," within the meaning of these words in the statute. In *Clark v. Farrington*, 11 Wis., 322, 323 and in the still earlier case of *Plank-road Co. v. Plank-road Co.*, 5 Wis., 173, this court had occasion to examine and speak of the legal signification of the word *necessary*, used in connection with or as it referred to the corporate powers and franchises of these companies, and the word was construed with considerable liberality. It may be that a more limited interpretation should be given here, but still, we think, one broad enough to include the hotel and premises in case they had been kept and used in the manner last above indicated.

But the proof is they were not so kept, but were kept and and used as a hotel or inn for the accomodation and entertainment of all, and the question arises whether, being so kept although their principal use may have been legitimate and proper, they were not by this act of the company taken out from the operation of the exemption clause, and voluntarily subjected to general taxation like any other hotel property. It certainly cannot be claimed to have been necessary for the

company to go into a general hotel business. This clearly was not necessary, especially at Prairie du Chien, where it appears that such accommodations are abundant. This amounted to a distinct business, which according to *Clark v. Farrington*, page 324, was unauthorized. In some of the cases to which we have been referred, the courts have separated the authorized from the unauthorized use so as to tax *pro rata*, or to hold distinct portions of the buildings and premises taxable, and the residue exempt. This seems to be impracticable and uncalled for in a case like this. It would appear to be more the object of the law and the duty of the courts to confine the company to an exercise of its strict corporate rights and privileges, by holding the whole property taxable, than to permit or encourage any excesses in these respects by a division or *pro rata* assessment of the property. It is the opinion of this court, therefore, that the premises in question were taxable, and the taxes thereon legally assessed for the years named in the complaint, and that the judgment appealed from should be affirmed.

*By the Court.*—Judgment affirmed.