THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY vs. THE BOARD OF SUPERVISORS OF CRAWFORD COUNTY and others.

*March 9 — March 30, 1880.*

RAILROADS. *Exemption of property of railroad companies from local taxation.*

1. Where property is necessarily used by a railway company in operating its road, it is not required, in order to exempt it from local taxation (under subd. 13, sec. 2, ch. 130, Laws of 1868), to be used *exclusively* for railway purposes, but it is sufficient if that is clearly shown to be its *principal* use.

JANUARY TERM, 1880.            667

C., M. & St. P. R'y Co. vs. B'd of Sup'rs of Crawford Co. and others.

2. Thus, where it appears that it was necessary, in 1873, for the proper accommodation of persons traveling by defendant's railway, that defendant should maintain an eating and lodging house for them at Prairie du Chien, adjacent to its road, and that a certain building owned by defendant, upon its land adjacent to its road, was principally used for that purpose, more than nine-tenths of its business, probably, consisting in furnishing entertainment to travelers by and employees upon said railway, it is *held* to have been exempt from local taxation; and the facts that plaintiff's tenant (not charged with rent) by whom it was conducted, took the profits thereof, and that commercial travelers, reaching and leaving Prairie du Chien by railroad, were entertained at the house for one or more days while transacting their business in that vicinity, will not prevent such exemption, where the house was not kept as a general hotel for the accommodation of the whole public. *M. & St. P. Railway Co. v. City of Milwaukee*, 34 Wis., 271, followed; and *M. & St. P. Railway Co. v. Board of Supervisors*, 29 id., 116, distinguished.

APPEAL from the Circuit Court for *Dane* County.

About the year 1870, the plaintiff brought an action against the defendant board of supervisors and certain public officers to restrain the collection and for the cancellation of taxes for the years 1868 and 1869, assessed against certain of its lots on or contiguous to its depot grounds in the city of Prairie du Chien, occupied by a building known as the "Dousman House," which it was claimed were necessarily used for the accommodation of travelers upon its railway, and therefore exempt from local taxation. The case came to this court, and is reported in 29 Wis., 116. The same property was assessed and taxed in 1873, and sold in 1874 for nonpayment of such taxes; and this action was brought in April, 1876, to set aside and cancel the tax certificate issued on such sale.

The pleadings in the two actions are similar. A sufficient statement of the pleadings in this action is contained in the brief of counsel for the defendant, as follows:

"The ground of the action is, simply, that the property was included within the exemption granted by the thirteenth subdivision of chapter 130, Laws of 1868, because a part of the plaintiff's depot grounds at Prairie du Chien, and 'necessarily used in operating the plaintiff's railroad.'

"The defenses pleaded by the answer are two: the *first*, that the property in question was not a part of the depot grounds, nor necessarily used in operating the railroad, but was distinct and separate from the depot grounds, and used and employed as a public inn or hotel, at which all travelers desiring entertainment were received, and had the right to be, and in connection with which hotel was a saloon and billiard room, open to all, and also a large stable for keeping horses, the whole enclosed together by a fence, and entirely separate and distinct from the depot, ticket-office, passenger waiting-room and other buildings of the company, at and upon its depot grounds, and leased to Mr. J. F. Williams, who managed and conducted the same as a business for his own profit and advantage; the *second*, that in 1870 the plaintiff brought a similar action against the defendants, the county board and the other public officers for collection of taxes, upon the same grounds and in respect to the same property, to set aside the taxes levied thereon in 1868 and 1869, in which it was adjudged that the premises were not exempt, which judgment was affirmed by this court, and that there was, in 1873, no change since 1868 in the situation and uses of the property, and the plaintiff was estopped by such former judgment from maintaining this action."

The findings of fact are as follows:

"That the property described in the complaint was, in the year 1873, occupied by a hotel known and called by the name of the 'Railway Hotel;' that the same was, during all that year, occupied by J. F. Williams as a tenant under the said plaintiff, and was used and kept by him as a hotel and railway eating and lodging house, for the use of travelers on the plaintiff's road; that the lots described in the complaint were all appropriated to the use of such hotel as part of its grounds and conveniences, and form part of the hotel property; that the said hotel was built by the plaintiff, and was, by the manner of its construction, designed for, and was during the year

1873 appropriated to the uses of, a hotel, by the landlord thereof, said Williams, soliciting and receiving all such guests as desired entertainment thereat, whether coming by the plaintiff's railway, or by any other modes of conveyance of any sort, and whether arriving for the purpose of taking passage elsewhere on the plaintiff's railway or upon any other conveyance; and that, although meals were furnished regularly to passengers stopping only for such meals when in transportation on the plaintiff's railway, all guests and passengers were received and entertained for whatever period of time they chose to stop at said hotel as guests, but he did not keep resident boarders; and that, in short, the said hotel was in all respects conducted as a first-class hotel, except that residents were not kept thereat. Although said hotel was built with the object principally to accommodate railway travel, it was also designed to embrace the accommodation and entertainment of all persons who might desire entertainment thereat as guests in the ordinary manner of a hotel.

"That the said hotel is a large building, comprising office, reception room, drawing room, and all the other usual convenient rooms of a good hotel, and 57 sleeping rooms, about 40 of which were used as guest rooms, and cost to construct about $50,000; that it had in 1873 a saloon and billiard room, inviting custom from all, whether coming or going by rail, or not traveling at all; that the said hotel and lots, described in the complaint, are substantially enclosed on three sides by a fence, and thereby separated on those sides from connection with the other property of the plaintiff.

"That about 150 feet distant is the passenger depot of the plaintiff at Prairie du Chien, in which are the usual waiting rooms for men and for women, ticket office, baggage room, and the usual conveniences of a depot in the usual form.

"That the main track of the railroad and several switch tracks are laid in the street in front of block 24, on which the hotel property and the passenger depot are situated; that a

long platform beside the main track extends from the passenger depot up to and along the front of the hotel, upon which passengers are accustomed to alight from trains, and upon which they may conveniently pass to said hotel; that the said track in no other manner passes by or over the property described in the complaint, nor is said hotel property otherwise connected with said depot grounds or buildings.

"That the said plaintiff derives no rent from the use of said building directly, but to induce the keeping thereof gives the use thereof to said Williams free of rent, and furnishes him firewood; but that said Williams otherwise pays all expenses of keeping said hotel, and enjoys all the gains and profits, and the said plaintiff built and maintains the same, as aforesaid, in the expectation and belief that it derives sufficient profitable returns in the increase of travelers caused thereby to go upon the plaintiff's railroad.

"That said property, in the complaint described, was not at the time in question necessarily used in operating the plaintiff's railroad, except as an eating and lodging house for travelers over its road.

"That the allegations of the answer respecting the former action between the same plaintiff and the defendants, the county board of supervisors of the county of Crawford and the public officers then charged with the collecting of taxes, are all true as made; that said action was brought for the same purpose as the present, and involved precisely the same inquiry, namely, the taxability of the property described in the complaint, which was in that action claimed by said plaintiff to be exempt from taxation for the same reason that the same is now claimed; that the only substantial difference between the two cases is, that in the former action the taxes levied in the years 1868 and 1869 were sought to be set aside, and in this action the tax levied in 1873 is sought to be set aside; that, however, there was no essential change in the condition, purposes, management, use, situation or circumstances of said

property in 1873 from the same in 1868 and 1869, and the facts of both cases are in every essential particular alike.

"And, except as above modified and particularly stated, the answer is found to be true."

As conclusions of law the court held: "That the plaintiff is not entitled in law to maintain this action; that the property described was duly assessed and taxed, and not exempt therefrom, in the year 1873; and that the plaintiff is barred of all right to maintain this action, and the defendants should have judgment accordingly, dismissing the plaintiff's action on the merits, and for the recovery of their costs to be taxed."

The opinion sufficiently states the testimony.

From a judgment for the defendants dismissing the complaint, the plaintiff appealed.

For the appellant, there was a brief by *Melbert B. Cary*, its attorney, with *John W. Cary*, of counsel, and oral argument by *John W. Cary*.

For the respondent, there was a brief by *Vilas & Bryant* and *Wm. H. Evans*, District Attorney of Crawford county, and oral argument by *Wm. F. Vilas*.

LYON, J. In the action brought by the present plaintiff againt the defendant board of supervisors and others, to restrain the collection of taxes assessed in 1868 and 1869 upon the property known as the Dousman House (being the same property affected by this action), the controlling finding of fact was as follows: "*Fourth*. That in the Dousman House, the front rooms thereof in the lower story are used as an office and ladies' sitting room; that the dining room is on the same story; that there is a saloon and billiard room in the basement; that the two upper stories are used for a parlor and sleeping rooms; that said Dousman House is occupied by one J. F. Williams; that said Williams pays no rent for said building; that most of the travelers on the said road eat their meals at said Dousman House; that all travelers and guests

are accommodated at the Dousman House as at other hotels; that citizens have been boarding at the house for the last three or four years."

The case reached this court, and is reported in 29 Wis., 116. The court was of the opinion that the evidence sustained the above finding, and established the fact that, notwithstanding the house was used, in certain specified particulars, for the accommodation of travelers on the plaintiff's railway, it was "open and kept and used for the accommodation of all guests and travelers, whether they are such as arrive and depart by railway carriage over the company's road, by boats navigating the Mississippi river, or by any other mode of public or private conveyance or travel. It is a public house or inn, alike open, and so kept and intended to be, for the entertainment and lodging of all who may apply, and in nowise differing from any other establishment of the kind, except in the particulars above stated." The judgment of the circuit court dismissing the complaint was accordingly affirmed, on the ground that the house was kept as a hotel for the accommodation of the whole public, and not distinctively for the accommodation of travelers by the railway of the plaintiff, although incidentally such travelers were accommodated thereat.

In the case of *The Mil. & St. P. R'y Co. v. The City of Milwaukee*, 34 Wis., 271, we had occasion to consider further the statute exempting certain property of railway companies from local taxation, and to explain the decision in the case first above cited. This is what is there said of that case: "In the case above cited *(Railway Co. v. Supervisors, etc.)*, we had occasion to construe this exemption law, and we there held that a building which was used *principally* as a hotel, and was kept in the manner hotels are usually kept, for the accommodation and entertainment of all persons, whether travelers upon the railway or not, together with the outbuildings and enclosures necessary to a hotel, and the land covered thereby and included therein, were not exempt from taxation under

this law, although the hotel was adjacent to the railroad track, and was owned and controlled by the company, and portions of it were used as a station house or depot for the accommodation of travelers on the railroad of the company. The decision was put upon the ground that it is not usual or necessary for railway companies to carry on a general hotel business, and hence that the property was not *necessarily* used in operating the railroad, within the meaning and intent of the statute. That case also decides that if the property is *principally* used for a purpose not necessary to the operating of the railroad, and if to a small extent only it be *necessarily* used in operating the road, it is not within the exemption of the statute.".

This explanation was thought necessary because there is some language in the opinion which might, unexplained, convey the idea that the premises would not be exempt from local taxation unless used *exclusively* for the accommodation of travelers upon the plaintiff's railway, and we did not intend to be so understood. The same principle was applied in that case, wherein it was held that certain freight or warehouses of the railway company were within the exemption of the statute because they were used *principally* for a purpose necessary to the operation of the railroad, although they were, to some extent, in charge of agents of propeller lines, who stored in them some goods received from propellers and consigned to parties in Milwaukee, and who collected storage charges thereon.

It was said in *Railway Co. v. Supervisors*, that it appeared by the testimony " that the erection and maintenance by railway companies, at suitable places along the lines of their roads and contiguous thereto, of station houses or buildings in which passengers may be properly and comfortably supplied and entertained with food and lodging as at hotels, is a necessity of modern railway travel;" and further, that such an establishment was necessary and proper at Prairie du Chien.

Indeed, it requires but little proof to show the necessity for such establishments at proper points, or that the point where a great railway line crosses the Mississippi river is one of these.

The question, the answer to which is decisive of the case, is, Does the evidence prove that the building in question was, during the year 1873, used *principally* as an eating and lodging house for the accommodation of travelers upon the plaintiff's railway? We think this question must be answered in the affirmative. The evidence is practically undisputed, that a very large proportion of the business of the house — probably more than nine-tenths of such business — consisted in furnishing entertainment to such railway travelers, and to plaintiff's employees on its railway. Other persons may have been entertained there occasionally, but cases of that kind are exceptional. There is considerable testimony to the effect that commercial travelers reaching and leaving Prairie du Chien by railroad were entertained at the house in question for one or more days while transacting their business in that vicinity. We are not prepared to say that this is objectionable, or that it tends to show that the house was kept as a general hotel for the accommodation of the whole public. Excluding cases of this class, and cases of persons stopping at the house as invited guests of Mr. Williams, the evidence showing that persons not travelers on the plaintiff's railway were entertained there is very meagre.

It is quite apparent that, to some extent, the learned circuit judge predicated his findings upon the similarity between this case and the case in 29 Wis., 116. There are many circumstances and conditions common to the two cases. This is necessarily so. But the controlling fact found in the former case, to wit, that the Dousman House was kept *principally* as a hotel for the general public, and only incidentally for the entertainment of travelers upon plaintiff's railway, is wanting here. That was the use to which the building and its appur-

tenances were chiefly put in 1868 and 1869, while in 1873 it is satisfactorily proved that the same property was chiefly — almost entirely — used for the accommodation of railway travelers.

It is scarcely necessary to say that the judgment in the case in 29 Wis. cannot have the effect of an estoppel in the present case. The taxability or non-taxability of the property depends upon the manner in which it is used. One mode of user renders it taxable; another mode exempts it from local taxation; and the use may change every year. Hence, because upon a given state of facts the property was adjudged to have been taxable in 1868 and 1869, it by no means follows that it must, upon another and different state of facts, be adjudged taxable in 1873.

To avoid any misapprehension of the scope and effect of our judgment in this case, it is deemed proper to say that in determining whether, in a given case, an establishment is a general hotel for the accommodation of the whole public, or whether it is chiefly kept for the accommodation of railway travelers, the court will not enter into any nice mathematical calculation of the relative amount of each class of business transacted at such establishment in order to determine its real character. If a railway company allows these establishments to be carried on in competition with other hotels for the general hotel business of the country, it does so at its peril that the property will be held taxable in the usual manner.

After the decision of the former case, several changes were made in the mode of conducting the house. Boarders, as distinguished from guests, were no longer kept. The horses of guests were no longer stabled for hire as formerly, and the name was changed from "Dousman House" to "Railway House." This change of name may not be a very material circumstance, yet it may have some significance as affecting the good-will of the "Dousman House" as a general hotel. Whether these changes are more or less important, the fact

remains that through some means, or by force of some agencies, the establishment which in 1868 and 1869 was a general hotel for the accommodation of the whole public, and only incidentally for railway travelers, became in 1873 an establishment *principally* for the accommodation of the latter class.

Some of the findings of the circuit judge are not altogether opposed to the view we have taken of the facts proved in the case. For example, he finds that the establishment was used and kept by Williams "as a hotel and railway eating and lodging house for the use of travelers on the plaintiff's road." Also, that "said hotel was built with the object principally to accommodate railway travel;" and further, that the property "was not, at the time in question, necessarily used in operating the plaintiff's railroad, *except as an eating and lodging house for travelers over its road.*" This is equivalent to finding that it was necessary for the purpose last mentioned.

It is true that in connection with the above findings it is found that the building was built for and used as a general hotel, but it is not expressly found that it was used in 1873 chiefly as a general hotel. We think the opposite fact, to wit, that it was used during the year principally for the accommodation of railway travelers, should have been found; and the existence of that fact entitled the plaintiff to the relief demanded.

*By the Court.* — The judgment is reversed, and the cause remanded, with directions to the circuit court to grant the relief demanded in the complaint.