TERMINAL WAREHOUSE COMPANY, Appellant, vs. CITY OF MILWAUKEE and others, Respondents.

*September 19—October 13, 1931.*

For the appellant there were briefs by *Olwell & Brady* and *George A. Gessner,* all of Milwaukee, and oral argument by *Lawrence A. Olwell.*

For the respondents there was a brief by *John M. Niven,* city attorney, and *Walter J. Mattison,* assistant city attorney, and oral argument by *Mr. Mattison.*

There was also a brief by *Rix, Barney & Kuelthau* as *amici curiæ,* and oral argument by *Rodger M. Trump* and *G. Carl Kuelthau,* all of Milwaukee.

FOWLER, J. The suit is to enjoin collection of a tax levied by the taxing authorities of the defendant city upon warehouse property in use by the plaintiff company on the ground that the property is subject to taxation by the State Tax Commission as railroad property of the Milwaukee road and not subject to local taxation.

The statute under which the plaintiff claims the property is taxable by the Tax· Commission is sec. 76.02, Stats., which provides that the commission shall assess and tax railroad property except real estate "not necessarily used" in operation of the road which is made subject to local taxation. The only issue is whether the property involved "is necessarily" so used, on which issue the plaintiff has the affirmative. The court found that the property was not so used and dismissed the complaint, and this finding must be upheld unless it is against the clear weight of the evidence or from the undisputed evidence it appears as matter of law that the property is necessarily so used.

The main facts on which plaintiff bases ·its contention are that the property is dock property immediately adjacent to the Milwaukee road's tracks upon which a warehouse stands affording storage facilities for water-borne freight for delivery to the railroad for further transportation and distribution by it and for freight carried by the railroad for further transportation by water. It is the only dock in Milwaukee to which any railroad has immediate access. Some water-borne freight is received at the dock for further transportation by the road. The plaintiff is the lessee of the property under two leases expiring fifty years from May 1, 1926, pursuant to which it has erected a re-enforced concrete warehouse at a cost of approximately $333,000 and is to complete a like addition thereto at an additional cost of approximately $130,000. There is no provision for removal of the building at termination of the lease such as is ordinarily contained in leases by railroads of premises

adjacent to their trackage. Having storage facilities immediately on its own trackage avoids switching charges for delivering freight to or taking it from warehouses on the Northwestern line. The railroad company and its assignees have owned the dock property for over forty years and a dock for lake vessels and a warehouse thereon for dry storage only were maintained up to shortly before the execution of plaintiff's leases, and up to then the warehouse and dock were considered and treated by the railroad and the Tax Commission and Interstate Commerce Commission as railroad operating property. The dock and warehouse became so dilapidated as to be unfit for further use. The railroad officials considered rebuilding the dock and erecting a warehouse with cold and freezer storage facilities thereon and the maintenance thereof as proper and desirable in furtherance of the business of the road, but because the road was in the hands of a receiver and they were unable to finance the improvement they, with the approval of the receiver, negotiated the leases to plaintiff. The leases require the plaintiff to build and maintain a dock the full length of the premises and to erect and maintain a warehouse thereon. They require the plaintiff to keep open and continually use the premises for warehouse purposes and "to provide ample cold-storage facilities, considering the demand for such service," and require it to provide whatever storage the railroad requires and to serve the railroad promptly and efficiently, and by the terms of the leases violation of these provisions would authorize the railroad to take possession of the property. The leases recite that the railroad is holding the premises for uses and purposes incident to transportation, and that should governmental agencies require the railroad to use the premises for such purposes the railroad may terminate the lease upon payment of the appraised value of the premises, and give the railroad rights in respect of valuation on taking over the property

which the right of eminent domain does not give in taking over private property. None of these provisions are contained in leases of railroad property to other warehousemen.

The railroad claims that it is necessary in the conduct of its business as a common carrier to maintain freezer and cold-storage facilities for meats, eggs, butter, cheese, fruit, and other perishable freight, and dry storage for other freight, and that the warehouse on the leased premises is necessary for such purpose, and that having such facilities upon its own dock and trackage gives it an advantage over other railroads in soliciting freight for transportation, especially water-borne freight.

The evidentiary facts above stated may all be admitted without forcing the conclusion that the leased premises are necessarily used in the operation of the railroad. The respondents stress other facts, some of which are as follows, as supporting the conclusion of the trial court to the contrary: Heretofore the railroad has not found maintenance of cold-storage facilities necessary to operation of its road. No other railroad maintains them. There was no change in business conditions demanding the construction of the warehouses on the railroad's premises. Private warehousemen provide freezer, cold and dry storage for other roads, rendering the same service to them that plaintiff renders to the Milwaukee road, and have and did have at time of the execution of the leases ample facilities to serve the latter road. The plaintiff conducts its business in competition with private warehousemen. The plaintiff fixes the storage charges by the month upon all freight received by it and the railroad publishes no storage tariffs. Freight received from the railroad is held by direction of the consignee or consignors, ordinarily for periods exceeding a month and often for several months. The railroad leased the former warehouse upon its premises to a private warehouseman for five years and until it became too dilapidated

for further use. The only water-borne freight that the road receives for further transportation is sugar, not perishable and requiring only dry storage; 53.38 per cent. of plaintiff's incoming business has been contributed by the railroad; 9.36 per cent. by boat; and 37.26 per cent. by truck. Its outgoing business is contributed, none by boat; 21.93 per cent. by the railroad, and 78.07 per cent. by truck. The switching charges avoided by having plaintiff's warehouse on the dock are negligible. There is a provision in the leases requiring the plaintiff to pay all "local taxes" levied on the leased premises. The plaintiff carries the building as its property in its statement of assets and the railroad does not so carry it and reports income from it as non-operating income to the State Tax Commission. Railroad officials, although here apparently in sympathy with plaintiff in its effort to avoid local taxation, have heretofore disclaimed any interest in the plaintiff's business and having any relations with plaintiff different from those that they would gladly establish with any other warehouseman desiring to erect a warehouse on their trackage premises. We consider that upon the whole evidence the trial court was right in concluding that the property is not "necessarily used in operating" the lessor's railroad.

Plaintiff's counsel urge that the holding of the trial court is contrary to previous decisions of this court involving the taxation of railroad property similarly situated and used. We do not so regard it. The language of the present statute, "necessarily used in operating the railroad," has since 1868 been in the statute exempting that species of railroad property from local taxation. Counsel for respondents lay great stress, as did the trial court, on *Milwaukee & St. P. R. Co. v. Milwaukee*, 34 Wis. 271. They go too far in saying that it necessarily rules the instant case. But plaintiff's counsel goes too far in saying that that case is overruled and this case is necessarily controlled by *Chicago, St. P., M. & O. R. Co. v. Bayfield County*, 87 Wis. 188, 58

N. W. 245. The *Milwaukee Case* held that under the facts therein involved an elevator was locally taxable because it was not necessarily used in operating the railroad, and the *Bayfield County Case* held that upon the facts therein involved an elevator was necessarily used in operating the railroad and was not taxable locally. The facts of the two cases differ widely. The underlying principle of these and other cases is that where an elevator, warehouse, dock, hotel, or other property situated on railroad property is principally used in the operation of the railroad it is not taxable locally, and when it is not principally so used it is taxable locally. *Milwaukee & St. P. R. Co. v. Crawford County,* 29 Wis. 116; *Milwaukee & St. P. R. Co. v. Milwaukee, supra; Chicago, M. & St. P. R. Co. v. Crawford County,* 48 Wis. 666, 5 N. W. 3; *Chicago, St. P., M. & O. R. Co. v. Bayfield County, supra; Chicago, St. P., M. & O. R. Co. v. Douglas County,* 122 Wis. 273, 285, 99 N. W. 1030. The facts involved not only justify but in our view compel the conclusion of the trial court that the warehouse in suit is not principally used in the operation of the railroad. Other language has been used to designate when railroad property is "necessarily used in operating" so as to exempt it from local taxation.

"The word 'necessary' here does not mean 'inevitable' on the one hand, nor merely 'convenient' or 'profitable' on the other, but a stage of utility or materiality to the carrier's business less than the first but greater than the latter of these expressions. Perhaps the phrase 'reasonably required in the exercise of sound business prudence' would express the idea fairly well." *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas County,* 159 Wis. 408, 412, 150 N. W. 422; *Chicago, St. P., M. & O. R. Co. v. Douglas County,* 122 Wis. 273, 279, 99 N. W. 1030. The facts of the case justify the conclusion that the use of the warehouse

by the railroad is no more than merely convenient and profitable.

The only feature of the case that seems to distinguish the use made by the railroad of the warehouse in any way from the use made by the other roads running into Milwaukee of other public warehouses is its use in receiving and holding water-borne sugar for further transportation by rail. But this use is so small a part of the total use as to make it negligible. It may with propriety be stated that should the railroad's business as a forwarder or distributor of water-borne freight so increase as to require the plaintiff to devote the property involved principally to the storage or handling of water-borne freight, or render such use necessary to the operation of the road within the terms of the definition last above given, the property will then be exempt from local taxation. It is only present use that brings property within the exemption. Property held for future terminal use as business shall require devotion to that use is locally taxable. *Duluth, S. S. & A. R. Co. v. Douglas County,* 103 Wis. 75, 79 N. W. 34. The same property may at one time be locally taxable and at another exempt from local taxation, dependent on the degree of use devoted to operation of the road. *Milwaukee & St. P. R. Co. v. Crawford County,* 29 Wis. 116; *Chicago, M. & St. P. R. Co. v. Crawford County,* 48 Wis. 666, 5 N. W. 3. The improvement of the property in the instant case apparently was arranged in anticipation of future rather than present demands for transportation of water-borne freight.

Other matters are discussed in the brief which bear indirectly upon the issue involved, but the above seems all that is necessary to determination of the case.

*By the Court.*—The judgment of the circuit court is affirmed.