LINCOLN FIREPROOF WAREHOUSE COMPANY, Respondent,
vs. CITY OF MILWAUKEE and others, Appellants.

*February 8—May 10, 1932.*

For the appellants there were briefs by *John M. Niven,*
city attorney, and *Walter J. Mattison,* assistant city attorney,
and, in opposition to respondent's motion for a rehearing, by
*Max Raskin,* city attorney, and *Herbert C. Hirschboeck,*
assistant city attorney; and oral argument by *Mr. Mattison.*

For the respondent there were briefs by *Kleczka & Stein-
hilber* of Milwaukee and *Olin & Butler* of Madison, and oral
argument by *H. H. Thomas* of Madison and *L. J. Kleczka.*
The following opinion was filed March 6, 1932:

FOWLER, J. The suit is to enjoin collection of taxes levied
by the taxing authorities of the defendant city in the years

1923 to 1928, inclusive, upon warehouse property in use by the plaintiff company on the ground that the property is subject to taxation by the State Tax Commission as railroad property of the Milwaukee road and not subject to local taxation.

The statute under which the plaintiff claims the property is taxable by the Tax Commission is sec. 76.02, Stats., which provides that the commission shall assess and tax railroad property except real estate "not necessarily used" in operation of the road, which is made subject to local taxation. The only issue is whether the property involved "is necessarily" so used. The trial court found that the property was so used and granted the injunction.

The case is a companion case to *Terminal Warehouse Co. v. Milwaukee,* 205 Wis. 607, 238 N. W. 513, which the parties agree states the law applicable, and which each side contends rules this case in its favor. The facts of the two cases as to location, ownership, and leasing of the land and erection and use of the building thereon as a warehouse are similar. The statement of the evidentiary facts in the opinion in the *Terminal Warehouse Co. Case* may be taken as the statement of such facts in this with few exceptions and only a few of such facts need be here mentioned. A six-story building with basement was erected by the plaintiff in 1923 at an expense of $250,000 on railroad property in a principal wholesale and retail district of Milwaukee according to plans prepared by the railroad company. The plaintiff has the right of removal of the building at termination of the fifty-year lease, but the concrete construction of the building is such as to make its removal improbable. The plaintiff also built a dock adjacent to the building, and an old dilapidated shipping depot and warehouse of the railroad on part of the premises was torn down to make place for the building. Two switching tracks constructed and maintained by the railroad company enter the ground floor of the build-

ing.  The railroad company receives from the plaintiff an annual ground rental of $7,200, which is reported by it to the Tax Commission as "non-operating income."  Freight is switched into the building in carload lots into a room occupied by tracks, platforms, and floor space.  This room comprises six per cent. of the entire floor space of the building. In this room fifty per cent. of the freight so received is broken up by the plaintiff, moved by the plaintiff into outgoing cars, and transported by the railroad to its destination; thirty per cent. is moved by plaintiff to other floors of the building and held in storage by plaintiff for consignees or consignors, mostly at monthly storage charges; the remaining twenty per cent. is unloaded by plaintiff from the cars to trucks and delivered to the consignees.  All charges for handling and storing freight are paid to plaintiff by consignees or consignors.  The portion of the ground floor of the building not occupied by this room, comprising sixteen per cent. of the floor space of the building, is rented by plaintiff for retail stores.  Thirty-two per cent. of the floor space of the building is rented for wholesale purposes; the entire upper floor of the building, fourteen per cent. of the entire building, is occupied in storage of household goods not received by rail.  The rest of the building, thirty-two per cent. of its floor space, or such part of it as is not vacant, is used by plaintiff in storing for consignees or consignors freight received by rail as above mentioned, comprising thirty per cent. of the incoming freight.

The trial court found as ultimate fact that "eighty per cent. of the said building at all times since its erection has been and now is used for receiving, storing, and delivering freight business of the railroad company."  This finding, however, is against the clear weight of the evidence.  As appears from the above, sixty-two per cent. of the building is used otherwise and thirty-two per cent. is occupied in storing

freight shipped in by the railroad. The storing of this freight, however, is not a railroad business but purely warehouse business. The storage of freight properly classed as railroad business or a railroad operation is limited to the holding of package freight or freight received in less than carload lots until it is called for by the consignee or consignor, and to holding such freight of such kind as is not called for until it is sold to cover freight and storage charges. And the business done by plaintiff in breaking up carload lots and removing the freight to other cars for further shipment is not railroad business. *Merchants Warehouse Co. v. United States,* 283 U. S. 501, 51 Sup. Ct. 505, 75 Lawy. Ed. 1227. The railroad business or operation done by plaintiff is limited to the twenty per cent. of the freight received into the building that is delivered on trucks at the building for cartage to the consignees, in doing which six per cent. of the building is used jointly with use by plaintiff in conducting its warehouse business. By no stretch of the facts can this railroad use be held to be the dominant or principal use of the property involved. Thus it must be held, within the rule of the *Terminal Warehouse Co. Case, supra,* that the property involved is not "necessarily used in operating any railroad" and is locally taxable.

It is contended by the respondent that the finding of the trial court "that the erection and completion of said terminal warehouse in the manner in which the same has at all times been used and operated was reasonably required in the exercise of sound business prudence by said railroad company" requires affirmance. This language, taken from the opinion in *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas County,* 159 Wis. 408, 150 N. W. 422, is the equivalent of the statement that the property "is principally used in the operation of the railroad." The two expressions define the same thing. *Terminal Warehouse Co. v. Milwaukee, supra.* When it

conclusively appears, as it does here, that the property is not principally used in railroad operations, it does not make it so used to say that its use is "reasonably required in the exercise of sound business prudence." In both cases, this and the *Terminal Warehouse Co. Case,* the erection and use of the buildings as used are convenient and profitable and advantageous to the railroad. "In each case the (storage) business is a convenience to the plaintiff (railroad), and promotes its business interests; but in neither case does the law require the plaintiff (railroad) to engage therein." *Milwaukee & St. P. R. Co. v. Milwaukee,* 34 Wis. 271, 283. From the whole evidence here it is plain that the business the plaintiff is conducting is a private warehouse business. That such business is conducted on railroad property, even when it is conducted by the railroad, does not make it railroad business, or make the property "necessarily used in railroad operations." *Milwaukee & St. P. R. Co. v. Milwaukee, supra.* If in the case last cited storing in its own elevator grain transported by the railroad did not make such storage a railroad operation, then, with stronger reason, that the goods stored by plaintiff in its warehouse are largely transported by the railroad does not convert its warehouse operations into railroad operations.

Certain evidentiary facts are stressed by respondent as ruling the case in its favor. Some of them, solicitation by plaintiff of the "long haul" for the railroad, dockage facilities, erection of the building upon the site and to take the place of buildings of the railroad formerly operated by the railroad as warehouse property, and that the warehouse is a "terminal warehouse," were as much involved in the *Terminal Warehouse Co. Case* as here. The fact is stressed that a "shipping depot" of the railroad formerly occupied the site of a part of plaintiff's building, by which we infer is meant a depot to which freight in less than carload lots is

delivered to the railroad for shipment by it. There is no evidence that plaintiff's building is such a depot or that plaintiff conducts such a business. That plaintiff's business is wholly "dry storage" instead of in part "cold storage" or "freezer storage" does not materially differentiate it from the *Terminal Warehouse Co. Case*. The main fact in both cases is that the business conducted by plaintiff is a private warehouse business, not the business of a common carrier. "It is no doubt true that entire harmony and concert of action between the carrier and warehouseman are important" (*Milwaukee & St. P. R. Co. v. Milwaukee, supra,* p. 282), but that such relation exists does not make the plaintiff's business railroad business or make the property involved "necessarily used in railroad operations."

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the complaint.

FAIRCHILD, J., took no part.

The following opinion was filed May 10, 1932:

FOWLER, J. The respondent moves for a rehearing and as ground therefor urges that the reversal of the judgment is erroneous because it violates sec. 10, art. I, of the constitution of the United States, which prohibits a state from passing any law impairing the obligation of contracts. The basis of the contention is that the plaintiff in contracting with the railroad company to pay the taxes locally assessed against the leased premises contracted to do so under the law as it stood when the contract was made, and that when this court by its decision in *Terminal Warehouse Co. v. Milwaukee,* 205 Wis. 607, 238 N. W. 513, changed the rule of the cases previously decided under the statute involved, the change of the law, as applied to the instant case, would impair the obligation of the plaintiff's contract.

We need not consider whether if the premises were sound the conclusion would follow, as the major premise is false and the conclusion falls with the premise. The rule of the *Terminal Warehouse Co. Case* did not change the law. It does not conflict with the prior decisions, but is in accord with and is based upon them, as the opinion in that case points out.

Other grounds for the motion are laid, but no good purpose would be served by discussion of them.

The motion is denied, with $25 costs.