CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD
COMPANY, Respondent, v. CITY OF MILWAUKEE and
others, Appellants. [Two appeals.]

*Nos. 273, 274. Argued April 2, 1970.—Decided May 1, 1970.*
(Also reported in 176 N. W. 2d 580.)

90

For the appellants there were briefs by *John J. Fleming,* city attorney, and *Maurice L. Markey,* assistant city attorney, and oral argument by *Mr. Markey.*

For the respondent there was a brief by *Godfrey, Trump & Davidson,* attorneys, and *Richard R. Robinson* of counsel, all of Milwaukee, and oral argument by *Mr. Robinson.*

BEILFUSS, J. The issues are:

(1) Did the trial court err in concluding the freight houses are necessarily used in the operation of the railroad business thus exempting them from local property taxes?

(2) Did the trial court err in awarding interest from the date of payment of taxes rather than the date of claim?

It should be first noted that this is not a tax exemption case where the issue is tax or no tax and the tax statute is to be strictly construed against exemption, but a question of which one of two governmental units, the local municipality or the state, shall tax the property in question. The parties agree that only one, not both, governmental units can tax the real estate in question. The state as well as the city has assessed the property and collected the tax.

The defendant-city concedes that the plaintiff qualifies under secs. 76.01 and 76.02, Stats., as a railroad company generally subject to taxation by the state not by municipalities. However, the city contends by virtue of sec. 76.02 (10) and (11) that it is entitled to tax this property. These subsections provide:

"(10) The property taxable under s. 76.13 shall include all franchises, and all real and personal property of the company used or employed in the operation of its business, except such motor vehicles as are exempt under s. 70.112 (5). The taxable property shall include all title and interest of the company referred to in such property as owner, lessee or otherwise, and in case any portion of the property is jointly used by 2 or more companies, the unit assessment shall include and cover a proportionate share of that portion of the property jointly used so that the assessments of the property of all

companies having any rights, title or interest of any kind or nature whatsoever in any such property jointly used shall, in the aggregate, include only one total full value of such property.

"(11) If the property of any company defined in sub. (8) is located entirely within a single town, village or city, it shall be subject to local assessment and taxation. *All property not necessarily used in operating the business* of any company defined in this section is excepted from taxation under this chapter and *shall be subject to local assessment and taxation."* (Emphasis added.)

The exemption claimed by the railroad is premised on sec. 76.23, Stats.:

"**Exemption from other taxation.** The taxes imposed by this chapter upon the property of the companies defined in section 76.02 shall be in lieu of all other taxes on such property necessarily used in the operation of the business of such companies in this state, except that the same shall be subject to special assessment for local improvements in cities and villages. The taxes so imposed and paid by such companies shall also be in lieu of all taxes on the shares of stock of such companies owned or held by individuals of this state and such shares of stock in the hands of individuals shall be exempt from further taxation."

The sole determination before the court, aside from the question of interest, is whether the plaintiff's freight houses should be classified as "property not necessarily used in operating the business" of the railroad company. The trial court stated in its conclusions of law:

"3. That the entire subject property herein, terminal buildings and facilities, is dominantly and principally used in the operation of plaintiff Railroad as a common carrier, and is so required in the exercise of sound business prudence given the developmental changes in modern railroad operating methods involving intermodal integration.

"4. That the terminal buildings and facilities located on the subject property herein are used in and necessary

to the prosecution of the business of plaintiff Railroad as a common carrier of freight within the meaning of section 76.03 (1) of the Wisconsin Statutes, and that they are necessarily used in the operation of the railroad business of plaintiff within the meaning of section 76.23 of the Wisconsin Statutes, and are accordingly exempt from real estate taxes imposed by defendant City of Milwaukee.

"5. That the subject property in question herein is properly taxable by the State of Wisconsin, under chapter 76 of the Wisconsin Statutes, and not by the defendant City of Milwaukee."

A summarization of the facts or factual inferences that are the basis for these conclusions are set forth in the trial court's excellent memorandum opinion as follows:

"1. The prior long term and customary use of railroad predecessor facilities by freight forwarders and distributors.

"2. The new facilities here involved were not a new operation, but merely a relocation of a pre-existing operation.

"3. The importance of the location of the instant facilities for convenience to the customers of the freight forwarders and distributors.

"4. The importance of the location of the instant facilities to switching and classification yards of the railroad.

"(Both points (3) and (4) emphasize speed of forwarding and distributing freight in order to enable the forwarders and distributors to compete by using railroad facilities.)

"5. The absence of other comparable facilities, the availability of centrally located land, and the dearth of capital or initiative in construction of such facilities.

"6. The large volume of revenue produced to the railroad.

"7. The fact that merchandise is not stored on the instant facilities, as has been the case in every situation where local taxation resulted.

"8. The fact that all of the freight handled, not just some of the freight handled, is shipped by rail."

When the principal facts in a case are undisputed and the controversy centers on what has been called ultimate conclusions of fact, or conclusions of law, this court has indicated it will not be bound by the findings of the trial court. *Dairy Queen of Wisconsin, Inc. v. McDowell* (1952), 260 Wis. 471, 474, 51 N. W. 2d 34, 52 N. W. 2d 791. The method of review that will be followed in such cases was delineated in *Engineers & Scientists v. Milwaukee* (1968), 38 Wis. 2d 550, 553, 554, 157 N. W. 2d 572:

"In the instant case, the findings of fact of the trial judge, other than the ultimate finding that ESM is a scientific and not an educational association, are substantially undisputed. In view of the fact that the evidentiary findings of fact made by the trial judge are conceded to be correct, this appeal does not pose the question of whether those facts are contrary to the great weight and clear preponderance of the evidence. Nor do we deem that such test is applicable to what the trial judge denominated as the ultimate conclusions of fact, for that conclusion is dependent upon the trial judge's construction of the term, 'educational association,' and as we stated in *Sprague-Dawley, Inc., v. Moore* (1968), 37 Wis. 2d 689, 693, 155 N. W. 2d 579, 'The problem presented is one of statutory construction and, therefore, is a matter of law to be decided by this court without giving any special weight to the conclusions. . .' of the trial court.

"Thus, we must look to the facts *ab initio* to determine whether the primary use to which the building is put comes within the compass of what the legislature has denominated as an educational association." [2]

The ultimate conclusion of fact in this case is whether the freight houses are "necessarily used in operating" the business of the railroad. However, in this instance the crucial statutory word "necessary" has heretofore been defined by this court.

In *Terminal Warehouse Co. v. Milwaukee* (1931), 205 Wis. 607, 238 N. W. 513, after detailing at length the

[2] *See also: National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 266, 163 N. W. 2d 625.

evidence respecting the use of the property, it was said at pages 612, 613:

" 'The word "necessary" here does not mean "inevitable" on the one hand, nor merely "convenient" or "profitable" on the other, but a stage of utility or materiality to the carrier's business less than the first but greater than the latter of these expressions. Perhaps the phrase "reasonably required in the exercise of sound business prudence" would express the idea fairly well,' *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas County*, 159 Wis. 408, 412, 150 N. W. 422; *Chicago, St. P., M. & O. R. Co. v. Douglas County*, 122 Wis. 273, 279, 99 N. W. 1030. The facts of the case justify the conclusion that the use of the warehouse by the railroad is no more than merely convenient and profitable.

"The only feature of the case that seems to distinguish the use made by the railroad of the warehouse in any way from the use made by the other roads running into Milwaukee of other public warehouses is its use in receiving and holding water-borne sugar for further transportation by rail. But this use is so small a part of the total use as to make it negligible. It may with propriety be stated that should the railroad's business as a forwarder or distributor of water-borne freight so increase as to require the plaintiff to devote the property involved principally to the storage or handling of water-borne freight, or render such use necessary to the operation of the road within the terms of the definition last above given, the property will then be exempt from local taxation."

In applying the rule of *Terminal Warehouse Company* to another fact situation, the court distinguished between temporarily holding freight for delivery and the enterprise of warehousing in *Lincoln Fireproof Warehouse Co. v. Milwaukee* (1932), 208 Wis. 70, 72, 73, 241 N. W. 623, 242 N. W. 558:

"The storage of freight properly classed as railroad business or a railroad operation is limited to the holding of package freight or freight received in less than carload lots until it is called for by the consignee or con-

signor, and to holding such freight of such kind as is not called for until it is sold to cover freight and storage charges. And the business done by plaintiff [warehouse company] in breaking up carload lots and removing the freight to other cars for further shipment is not railroad business. *Merchants Warehouse Co. v. United States,* 283 U. S. 501, 51 Sup. Ct. 505, 75 Lawy. Ed. 1227. The railroad business or operation done by plaintiff is limited to the twenty per cent. of the freight received into the building that is delivered on trucks at the building for cartage to the consignees, in doing which six per cent. of the building is used jointly with use by plaintiff in conducting its warehouse business. By no stretch of the facts can this railroad use be held to be the dominant or principal use of the property involved. Thus it must be held, within the rule of the *Terminal Warehouse Co. Case, supra,* that the property involved is not 'necessarily used in operating any railroad' and is locally taxable."

The freight houses involved in the instant case were constructed in 1964 as part of "Project Milwaukee," which included the dismantling of the Milwaukee Road passenger terminal, construction of the east-west expressway, and a new, relocated union railroad station adjacent to the new post-office building. The project involved the replacement of the freight terminals formerly located in the area now occupied by the new post office. The present freight houses were built to replace those terminals.

At the time of the construction the railroad investigated the possibilities of having private groups construct the freight houses for use in freight forwarding and for all transfers between rail and truck transportation. They found that capital was not available for building this type of facility. There was a scarcity of freight forwarding terminals in Milwaukee at that time, so the railroad built the freight houses.

The particular site for these buildings was chosen because of its location in the center of the freight forwarders' distribution area and because of better train service in the heart of the switching district. When the

new buildings were first utilized the northerly one was occupied by Lifschultz Fast Freight, Inc., a freight forwarder, and Loop Distributors, a local distribution-only firm. Loop Distributors had formerly serviced the Northwestern Railroad, and was "pirated" away by the plaintiff after these freight houses were built. The other firms were former tenants of the plaintiff in the old terminal. The southerly building was first occupied in part by Republic Carloading, licensed by the ICC as a freight forwarder, and in part occupied by the plaintiff engaged in less-than-carload lot (LCL) operations.

In 1965, the plaintiff was authorized by the ICC to cease its LCL operations [3] and then leased the remainder of the southerly building to Loop Distributors, ABC Fast Freight and National Carloading.

The real estate manager for the railroad testified the only activity of the railroad in the actual loading and unloading of the cars by the freight forwarders is to spot the car at the correct door along the platform and then pick it up again when the process is completed. It is undisputed there is no storage [4] in these freight houses. The merchandise may sit on the floor for an hour or two in the process of transfer, but basically it can be defined as a "through movement."

In the three years involved in this suit, plaintiff-railroad had net freight revenues totaling $890,640 based on a record of 9,712 inbound cars and 3,186 outbound cars.

In the reports the railroad makes to the ICC it classifies these buildings and the income from them as "operating" accounts. The Wisconsin Department of Revenue adheres to the ICC reporting procedure and thus the income is also reported as "operating" income in the

---

[3] Railroads are now prohibited from engaging in business of freight forwarding. 49 USCA, p. 466, sec. 1010 (c).

[4] The fact that there is no warehouse storage is the principal fact that distinguishes this case from *Terminal Warehouse Co. v. Milwaukee, supra,* and *Lincoln Fireproof Warehouse Co. v. Milwaukee, supra.*

plaintiff's state tax returns. The director of the utilities tax bureau of the Wisconsin Department of Revenue testified that he has viewed the instant property and the commercial activity there on at least three occasions. He testified that it is his bureau's interpretation of ch. 76, Stats., the property is "necessarily used" in the railroad operations.

The respondent argues that the decision of both the ICC and the Wisconsin Department of Revenue that the instant property is an "operating" aspect of the railroad business is entitled to considerable weight in construing the statute. This court has so held even when the administrative construction is made in partial reliance on reports filed by the person being regulated by the administrative body. *See State v. Johnson* (1925), 186 Wis. 59, 68, 202 N. W. 319; *Marinette, T. & W. RR. Co. v. Railroad Comm.* (1928), 195 Wis. 462, 218 N. W. 724.

It is arguable that the present construction of the statute by the Department of Revenue is not long-standing enough to entitle it to great weight. However, it must also be remembered that a certain amount of deference is due the interpretation of those officials more closely attuned to the operation of these commercial public utilities than the courts and probably local assessors too.

In addition to reliance on the construction given this matter by the Department of Revenue, the trial court made extensive referenece by judicial notice to the bimodal operations of modern railways, especially the phenomenon of piggy-back and container freight transportation as a part of modern, efficient intermodal transportation, that is essentially one continuous operation.

Some sort of physical facility is necessary at a freight terminal for members of the public who do not have property adjacent to the railroad or a private spur track. Without some sort of adequate facility for the loading and unloading of freight cars the efficiency of railroad

freight transportation would be greatly curtailed, if not abandoned, to the detriment of the public. The freight forwarders involved here (with the exception of the one freight distributor) are common carriers and must service the public. The property in question is wholly owned and was built by the railroad. The use to which it has been put as revealed by the record amply supports the conclusion the plaintiff's freight houses are " ' "reasonably required in the exercise of sound business prudence." ' " *Terminal Warehouse Co. v. Milwaukee, supra,* page 612, and thus exempt from municipal taxation under ch. 76, Stats.

The taxes for which refund is sought were paid January 26, 1966, January 31, 1967, and January 31, 1968. The claims for allowance of refunds were filed, respectively, July 1, 1966, July 14, 1967, and January 31, 1968. The trial court ordered interest from the date of payment for each year.

The defendant urges that the statute governing recovery of money paid for taxes illegally levied, sec. 74.73, Stats., only allows interest from the date the claim was filed. Sec. 74.73 (1) provides, in part:

". . . If any town, city or village fails or refuses to allow the claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected, together with interest at the legal rate *computed from the date of filing the claim. . . .*" (Emphasis supplied.)

The provision of the statute allowing the recovery of interest was adopted in ch. 157, Laws of 1967, with an effective date of November 17, 1967. It is clear that interest can now only be allowed from the date of the filing of the claim; in this case that would amount to a difference of about six months each for 1965 and 1966 taxes. However, the taxes for those years were paid and the claim for refund filed before the effective date of the new statute. Therefore, the recovery of interest for obli-

gations incurred prior to that date must be determined at common law.

In *Milwaukee v. Firemen Relief Asso.* (1969), 42 Wis. 2d 23, 40, 41, 165 N. W. 2d 384, this court abolished the immunity of municipalities to the payment of interest on sums of money unlawfully detained. Thus, we must conclude the city is liable for interest for the years 1966 and 1967 from the date it deprived the railroad of the use of its money, namely the date of payment.

*By the Court.*—Judgments affirmed.